COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
NO. BD-2004-0023

IN RE:   MATTHEW COBB.

MEMORANDUM AND ORDER

This bar discipline matter is before me on an Information
and Record of Proceedings with the Vote and Recommendation of the
Board of Bar Overseers (board), all as filed by the board on
March 8, 2004.  I have reviewed the substantial record, and
considered the arguments of the parties.  For the reasons set
forth below, I conclude that the appropriate sanction to be
imposed on the respondent is disbarment from the practice of law.

Bar counsel filed a petition for discipline against the
respondent on February 12, 2001, charging professional misconduct
in three separate counts, each count pertaining to misconduct
arising in the course of the respondent's representation of three
different clients.  A condensed overview of the charges is as
follows.  Count one arose from the respondent's representation of
Dr. Omar Jaraki and alleged that the respondent filed a motion
containing improbable and false allegations that he failed to
corroborate, thereby exposing Dr. Jaraki to sanctions, and that
the respondent made groundless representations to the court.
Count two arose from the respondent's representation of Richard
and Jean Nutile, a married couple, and alleged that the
respondent filed a complaint against their adversaries' attorneys

without grounds to support it, misrepresented to his clients that
they had been sanctioned, persisted in a frivolous appeal,
converted his clients' settlement proceeds to pay sanctions
assessed against him personally, and without good ground or
support, alleged in papers filed in the Appeals Court that a
Superior Court judge who had sanctioned him had been improperly
influenced and was biased.  Count three arose from the
respondent's representation of Marie Malave and alleged that the
respondent settled a case without her authority, continued to
represent her when their interests were in conflict, disclosed
client communications, and made misrepresentations to a court and
to bar counsel.

The respondent, who has and continues to represent himself
throughout these proceedings, filed an answer on March 7, 2001.
Following six days of hearings, the hearing committee, on
February 21, 2003, entered its report, finding that the
respondent had violated numerous disciplinary rules and
recommending that he be disbarred.  A copy of the hearing
committee's report is appended hereto as Attachment A and is
incorporated herein by reference.  Following a hearing before a
panel of the board (panel), the panel, in a report dated December
2, 2003, adopted the hearing committee's findings in their
entirety, concluded that the respondent had violated numerous
disciplinary rules, and recommended that the respondent be

disbarred. A copy of the panel's report is appended hereto as Attachment B and is incorporated herein by reference. The board, on February 9, 2004, voted to accept the panel's report and its recommendation of disbarment.

Although not bound by the recommendations of the board or bar counsel, see Matter of Alter, 389 Mass. 153, 157 (1983), I conclude, after examining the record, that the evidence before the hearing committee supports its factual findings which were adopted in their entirety by the panel.[1] I conclude that the factual findings, and inferences therefrom, support the conclusions of law made by the panel, and I adopt those conclusions of law by incorporation by reference.

Much like his appeal to the panel, the respondent does not make clear his basis for appeal. The panel's characterization is descriptive of this appeal:

> "[The respondent] does not challenge particular, identified findings of fact or conclusions of law. Rather, as to each count he offers confusing, rambling, broad attacks on some factual assertions and/or conclusions, liberally punctuated with invectives and diatribes calling into question the integrity of the hearing committee, a [] Superior Court [judge], the Appeals Court and [b]ar [c]ounsel."

The respondent's filings render a particularized response difficult. As such, I shall begin by making some generalized

---

[1] The facts underlying the three counts are quite lengthy and involve somewhat confusing proceedings. I therefore do not recite the factual findings, but incorporate them by way of reference.

remarks in response to isolated, sporadic contentions injected in the respondent's brief in connection with the three separate pieces of litigation involved, and then turn to more specific issues.

The Jaraki matter

The respondent hides behind the words of his former client, Dr. Jaraki, to justify his representations to the court in the Jaraki matter, erroneously believing, apparently, that he may accept the words of his client as gospel as his only investigation into the matter underlying his court filings or verbal representations to the court. This belief is wrong and, for the reasons explained in the record, the respondent did not conduct a reasonably inquiry into the matter as required by Mass. R. Civ. P. 11, 365 Mass. 753 (1974). The respondent should know that a settlement can and does occur for many reasons, and does not "weigh[] against" a party's credibility. The respondent has submitted no evidence to support his contention that "[b]ar [c]ounsel pocketed the case to ensure that Jaraki would be out of [S]tate without any obligation to return." What emerges in the respondent's filings is a pattern of making serious, unsupported allegations regarding others, apparently to deflect attention from his own misconduct. Repeated engagement in these tactics only reinforces the appropriateness of his sanction.

There is no credible evidence supporting the respondent's

allegations that he has been subjected to discipline because he reported alleged unethical conduct of Judge Gertner, and thus, was "retaliated against in connection with the exercise of his [F]irst [A]mendment rights." Contrary to the respondent's statements, judges in this State are not immune from the consequences of misconduct, and lawyers should certainly report any perceived misconduct. However, an officer of the court cannot evade responsibility from his own actions merely by alleging misconduct by another. Here, the record relied on by the respondent to establish a "prima facie [showing] that such a fraud [act of retaliation] was attempted," does not support his allegations. The only evidence supporting the respondent's allegations of misconduct by Judge Gertner is a self-serving affidavit by Dr. Jaraki consisting of hearsay evidence, which was discredited. Discredited hearsay evidence, together with absolutely no evidence concerning any improper motive for the commencement of the bar disciplinary proceedings against the respondent, is not sufficient to call into question the motive for the bar discipline proceedings, let alone, establish a First Amendment violation.

Furthermore, the panel correctly rejected the respondent's First Amendment claim because it was not properly argued in his brief. See Rule 3.51 (a) (1) (iv) of the Rules of the Board of Bar Overseers (1997) (providing that "briefs on appeal shall

contain . . . [t]he argument in support of the appeal with appropriate references to the record and legal authorities"). Cf. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). In his "Brief on Appeal Objecting to Hearing Committee Report," the respondent states that "[t]he punishment for protected or compelled speech on issues of public concern is unconstitutional." This bald statement, together with other isolated conclusory statements, without any further development and citation to any legal authority, is insufficient argument and did not warrant review by the panel.

The Nutile matter

The respondent argues that no evidence of "theft" exists. The record belies his contention. As explained by the panel, the hearing committee credited Richard Nutile's testimony that the $2,000 check he wrote on April 28, 1995, comprised one-half of the $4,000 sanction assessed by Judge Sosman (then of the Superior Court) on August 12, 1994, against the respondent personally. That this evidence could have been disbelieved and a different version of events accepted is of no import. The evidence supported the findings and conclusions rendered by both the hearing committee and the panel.[2] The same can be said about

---

[2] If the $2,000 paid by Mr. Nutile had not been intended to cover half of the $4,000 sanction ordered by Judge Sosman, it seems unlikely that, in his June 23, 1995, corrected settlement statement, the respondent would have credited back the Nutiles that $2,000, while simultaneously deducting the $3,244.50

the sanction of $3,244.50 ordered by Judge Laurence (of the Appeals Court) and the conversion of those funds, albeit not necessarily when originally imposed.

Concerning the respondent's allegation that bar counsel and the board "conspired to create a record for this court which hides the fact that the Nutiles were present when Judge Sosman said it was [him] personally who was to be sanctioned," the allegation, in that it alleges a "conspiracy" or improper conduct by bar counsel and the board, is entirely unsupported by evidence. Further, the underlying statement concerning the Nutiles' presence at the February 2, 1994, hearing before Judge Sosman, is immaterial. As explained by the panel:

> "The fact that [the respondent's] clients, who are not lawyers, may have been present at a hearing did not preclude the committee from finding the respondent made misrepresentations to them. The Nutiles testified to that effect, and clearly, the committee chose to credit their testimony. Further, the Nutiles testified they were seated in the back of the courtroom and did not hear much of Justice Sosman's order. Finally, the fact that the Nutiles testified they never received a copy of the written decision, which would have clearly stated the court's position vis-a-vis payment of fees and costs, raises the clear inference that the respondent chose to take advantage of his clients' ignorance and/or uncertainty as to their responsibility in extracting a portion of the sanctions from them."

I note that Mrs. Nutile did not testify at the hearing, but the testimony of Mr. Nutile supports the panel's statements and conclusions. That there was an improper "invention" of an August

---

sanction ordered by Judge Laurence.

1994 hearing before Judge Sosman is not supported by any evidence. While it appears from the docket that Judge Sosman did not conduct a hearing on August 12, 1994, when she entered her order assessing sanctions against the respondent in the amount of $4,000, the issue of whether there was a hearing is immaterial to the case. The judge's order that day was a byproduct of the hearing on February 2, 1994, at which the respondent was fully heard on pertinent issues.

Concerning the respondent's allegations that attorney Joseph G. Blute was not acting in good faith during the proceedings, Blute's credibility was for the hearing committee to decide. The hearing committee observed this witness and chose to credit his testimony, and I afford deference to such a credibility determination, especially in the face of barren allegations of such an inflammatory nature. See S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980) (according to hearing committee position of "the sole judge of credibility of the testimony presented at the hearing"). See also Matter of Saab, 406 Mass. 315, 328 (1989), and cases cited.

The respondent contends that he has been punished for making an argument that "one judge (Sosman) finds 'frivolous' and, another (Collings), well supported." The judge he refers to is the United States District Court Magistrate judge for the District Court of Massachusetts who authored Meltzer v. Grant,

193 F. Supp. 2d 373 (D. Mass. 2002). In Meltzer, supra, the
defendant law firm claimed that, pursuant to the "litigation
privilege" under Massachusetts law, it could not be liable under
various theories for sending a letter to the plaintiffs, stating
that if they failed to accept the proposal therein, its client
would bring derivative claims against them for self-dealing,
embezzlement, misappropriation of assets and mismanagement, and
would "inform the appropriate authorities concerning [the
plaintiffs'] activities." Id. at 376-377. In determining the
defendant law firm had not established that the privilege
applied, the judge concluded "that if faced with the question,
the SJC would continue to adhere to the test . . . that an
absolute privilege applies to communications made preliminary to
proposed judicial proceedings if judicial proceedings are
contemplated in good faith and under serious condition. Id. at
381. In the Nutile matter, the respondent had argued before
Judge Sosman that the response to his G. L. c. 93A letter by
attorney Alan Rose, then of Nutter, McClennen & Fish, was not
privileged under the litigation privilege (as claimed by Rose and
Nutter, McClennen & Fish) because the response did not in good
faith threaten a lawsuit.

    The respondent overlooks that (1) the Meltzer case is
distinguishable from the facts underlying the Nutile matter, and
the Federal judge made a point of drawing those distinctions, see

Meltzer, supra at 378-380; (2) the Meltzer case does not establish that he was "right" all along; it is a decision by a Federal trial court judge opining what the full court would decide on a legal question under a different set of facts; (3) the Appeals Court affirmed Judge Sosman's order dismissing the respondent's clients' claims based on Rose's letter, concluding that the privilege applied and is absolute, see Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140-141 (1996); (4) the committee had correctly concluded that it was clear at that point in time that a violation of a disciplinary rule did not establish a basis for civil liability; and, most significantly, (5) the sanctions imposed by Judge Sosman on the respondent were also based on his improper motive, namely, to deprive Rose's clients of chosen counsel. For these reasons, the respondent's claim fails.

The respondent alleges that, in violation of the First Amendment, he has been punished for "report[ing] highly questionable acts of two popular judges," the first being judge Gertner, discussed and rejected above, and the second being Judge Sosman. He specifically continues to maintain that Judge Sosman was biased and influenced. As for bias, he claims that her alleged bias toward attorney Rose and the firm at which he was then employed, Nutter, McClennen & Fish, "was objectively manifest given Judge Sosman's acts at the hearing." The

transcript of the hearing, held on February 2, 1994, does not support his claim. The transcript reveals that the judge listened and considered the respondent's arguments. Indeed, it shows a respectful exchange and insightful questions.

As evidence of bias, the respondent alleges that "it was [a]dmitted at the BBO hearing that [attorney] Blute switched the 'F' session [j]udge to Judge Sosman ex parte and without [his] knowledge" (emphasis in original). Nothing in the transcript supports the respondent's allegation that attorney Blute made such an admission or engaged in misconduct concerning the case's judicial assignment. Rather, the transcript indicates that the case had been reassigned to Judge Sosman because attorney Blute was faced with a conflict in appearing before Judge Barrett, the judge initially assigned to the matter:

> "BAR COUNSEL: Now, Mr. Blute, did you attend a hearing on the motion for, to dismiss, sir?
>
> "THE WITNESS: I did. We filed, we had a hearing scheduled, we went up to Suffolk Superior Court, the case was assigned to Judge Barrett.
>
> "BAR COUNSEL: What happened?
>
> "THE WITNESS: Judge Barrett recused himself, Judge Barrett, Charles Barrett was a partner of mine at Nutter, McClennen; he had only recently joined the bench and only recently left Nutter. I personally worked under him basically for most of my associate career, he basically trained me, and I think he appropriately decided this was not a matter he could hear and so he recused himself and Judge Sosman happened to be in that session and it was transferred to Judge Sosman. And I remember we had some preliminary discussions on one day and she said, well, let me read the papers and come back and we'll have argument

tomorrow, so that it was two days.  That's my best memory. .
. .

    "BAR COUNSEL:  One question about Judge Sosman.  Did
you know Judge Sosman prior to the case?

    "THE WITNESS:  I've never met Judge Sosman, this is the
first and only time I appeared before her, and I've had no
contact with her since."

Further, the following endorsement by Judge Barrett appears in

the record on the bottom margin of the motion, "I must recuse

myself as I was a partner at N, M & F."  While the endorsement is

dated February 7, 1994, which post-dates the February 2, hearing

before Judge Sosman, that date, by itself and on this record, is

no evidence of judicial misconduct by Judge Sosman or of

misconduct by attorney Blute.  Nor can such an inference be drawn

from the notation of the date, as such an inference would in no

way be reasonable.  I add that the respondent chose not to

testify at the hearing, so he offered no testimony to refute

attorney Blute's testimony or to substantiate his unsupported

allegations, and, significantly, he did not object to Judge

Sosman presiding at the February 2, 1994, hearing.

    Last, there is no substance to the respondent's claim that

by permitting attorney Blute to represent Nutter, McClennen &

Fish, "[Judge] Sosman knowingly allowed the unethical practice of

law before her."  The issue of attorney Blute's representation of

Nutter, McClennen & Fish was raised by the respondent, but not

pursued with either Judge Sosman,[3] who rejected the notion that the law firm be required to incur extra expense to defend against a frivolous suit, or the board.[4] In any event the claim fails because it has never been sufficiently argued with citation to any legal authorities. See Rule 3.51 (a) (1) (iv) of the Rules of the Board of Bar Overseers (1997) (providing that "briefs on appeal shall contain . . . [t]he argument in support of the appeal with appropriate references to the record and legal authorities").

In addition to failing to produce sufficient evidence of misconduct or bias by Judge Sosman, the respondent presents no evidence of motive, that is, that the bar disciplinary proceedings were commenced to punish him for his speech concerning the judge. For all these reasons, the respondent's First Amendment claim is meritless.

The respondent alleges that Judge Sosman and bar counsel "actively prevented" discovery of the truth concerning his

---

[3] The respondent stated:

> "We have Mr. Blute here representing Nutter. He's a partner with that firm. He has a pecuniary interest in this suit, yet he's here today arguing on behalf of Nutter, McClennen & Fish. Now, I haven't -- that's a violation. If you have a pecuniary interest in the suit you should not be doing this, okay. I haven't made any complaint about that."

[4] That the suit was frivolous was a conclusion drawn not only by Judge Sosman and a single justice of the Appeals Court, but also by the Appeals Court. See Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 142-144 (1996).

allegations of bias and influence. The respondent submits no evidence of this claim, and it therefore is rejected. It is also rejected because, again, it is only a fly-by remark; it is not sufficiently argued. See Rule 3.51 (a) (1) (iv) of the Rules of the Board of Bar Overseers (1997) (providing that "briefs on appeal shall contain . . . [t]he argument in support of the appeal with appropriate references to the record and legal authorities"). Further, it is rejected because it was not argued below. See Sugarman v. Board of Registration in Medicine, 422 Mass. 338, 347 (1996) (rejecting claim made on appeal that was not raised below in administrative proceedings), and cases cited.

Specific issues

Illegal "stacking" of claims

In his answer, the respondent alleges that "[t]he BBO is illegally stacking unresolved cases on [him] to attempt to take him out of the first offender category." In his "Brief on Appeal Objecting to Hearing Committee Report," the respondent states that, "[g]enerally as to all Counts[,] [t]he 'stacking' of these cases in one proceeding is unconstitutional." In his "Brief on Appeal Objecting to Appeal Panel Report," the respondent repeats this same statement.

The panel correctly rejected the respondent's "stacking" claim because it was not argued in his brief. Rule 3.51 (a) (1) (iv) of the Rules of the Board of Bar Overseers (1997) (providing

that "briefs on appeal shall contain . . . [t]he argument in support of the appeal with appropriate references to the record and legal authorities"). The respondent offered nothing more in support of his stacking claim than the above-referenced bald accusations, and, as such, violated the rule. The panel went on to correctly note that, even if it were to consider the argument, the argument lacked merit. See Matter of Saab, supra at 322 n.10 (noting that "severance of separate issues in bar discipline cases is inappropriate because it would defeat the very purpose of bar discipline"), and cases cited.

Prosecutorial misconduct

In his answer, the respondent alleges that the assistant bar counsel handling his case (bar counsel): (1) "is incompetent and unethical, and has maliciously reinvented the facts herein to suit her prosecution;" (2) "stole [his] file in [the] Malave [matter];" and (3) "maliciously libeled [the respondent] relative to the false allegation that he converted funds." In his "Brief on Appeal Objecting to Hearing Committee Report" and "Brief on Appeal Objecting to Appeal Panel Report," the respondent maintains that bar counsel's accusation of conversion of client funds is "false, scandalous, and malicious." These inflammatory remarks have absolutely no merit. The testimony of Mr. Nutile, as well as certain documentary evidence, supports the conversion charge.

The respondent did not pursue the claim that bar counsel stole his file. The claim was not pursued before the hearing committee or the panel. To the extent this accusation forms a basis for this claim, I do not consider it.

Concerning the allegations of unethical conduct by bar counsel in that she reinvented facts, there is no evidentiary basis in the record to support those allegations. Nor was there any evidence in the record to support the bare allegations that bar counsel "intentionally tricked" and "economically coerced" the Nutiles. The respondent ignores Mr. Nutile's testimony that bar counsel did not tell him that the respondent was going to be suspended. The hearing committee was free to credit this testimony, as it implicitly did. Last, like his other claims, the claim of prosecutorial misconduct is rejected because it was not properly argued. See Rule 3.51 (a) (1) (iv) of the Rules of the Board of Bar Overseers (1997) (providing that "briefs on appeal shall contain . . . [t]he argument in support of the appeal with appropriate references to the record and legal authorities").

Lack of a fair trial - bar counsel never loses

In his "Brief on Appeal Objecting to Hearing Committee Report" and "Brief on Appeal Objecting to Appeal Panel Report," the respondent claims that "[t]he fact that, to a statistical certainty, any lawyer indicted by the Board is always found

guilty is unconstitutional."  The panel correctly rejected this
claim because it was not argued in his brief.  See Rule 3.51 (a)
(1) (iv) of the Rules of the Board of Bar Overseers (1997)
(providing that "briefs on appeal shall contain . . . [t]he
argument in support of the appeal with appropriate references to
the record and legal authorities").  Again, the respondent's
argument consisted nothing more than a bald assertion.

     I do not consider the statistics presented by the respondent
in one sentence on page 2 of exhibit C to paper no. 4 ("For the
period 1974 - 2000, out of approximately 1750 reported decisions,
the system has acquitted approximately 1.0% of those it indicts
generally, and approximately 0.0% of those it indicts for theft
sounding charges heard at the BBO according to the undersigned's
research").  Those "statistics" were never presented to the
hearing committee or panel to consider.  Further, even if those
"statistics" had been presented, the sentence makes no sense (bar
counsel does not obtain indictments against attorneys) and itself
is nothing but an unsupported allegation.

Defective indictment

     The respondent did not raise his claim of a "defective
indictment" below and on that basis alone it is rejected.  See
Sugarman v. Board of Registration in Medicine, supra at 347
(rejecting claim made on appeal that was not raised below in
administrative proceedings), and cases cited.  However, on the

merits, I conclude that the claim has no merit. The petition for discipline fairly put the respondent on notice of the conversion charge and basis therefore, and the respondent was afforded a hearing before the hearing committee so that he could reply to the charge and present evidence. See Matter of Kenney, 399 Mass. 431, 435 (1987). That the timing of the conversion was not proven by bar counsel exactly as had been plead in the petition for discipline does not alter my conclusion.

Preindictment delays[5]

The petition for discipline alleged misconduct that occurred as early as 1995 (count one), 1992 (count two), and 1998 (count three). Bar counsel filed the petition for discipline against the respondent on February 12, 2001. In his answer, the respondent alleges that he "has been deprived of due process because these (first two at least) cases are too old, causing [him] to be unable to adequately defend himself as [Dr.] Jaraki is without the subpoena power of this [S]tate." At his hearing, he argued that he was prejudiced by the delay in the disciplinary proceedings because it rendered Dr. Jaraki unavailable. In his "Brief on Appeal Objecting to Hearing Committee Report," the respondent states that "[t]he lack of a limitations period is per se unconstitutional." He repeats this statement in his "Brief on

---

[5] The respondent was not "indicted." Rather, a petition for discipline was filed against him.

Appeal Objecting to Appeal Panel Report."

The panel correctly rejected the respondent's constitutional claims concerning "preindictment delays" and the lack of a limitations period because the claims were not properly argued in his brief. See Rule 3.51 (a) (1) (iv) of the Rules of the Board of Bar Overseers (1997) (providing that "briefs on appeal shall contain . . . [t]he argument in support of the appeal with appropriate references to the record and legal authorities"). Again, the respondent's argument consisted nothing more than bald assertions, lacking legal argument and authority. While the respondent developed his claim with argument by incorporating by reference in paper no. 4 (filed with the county court) his "Verified Brief In Support of Motion for Temporary Restraining Order and For Issuance of Order of Notice" in his pending Federal action (exhibit C to paper no. 4), he presented no such argument to the hearing committee or panel. Further, the panel went on to correctly note that, even if it were to consider the claim, it lacked merit. See Matter of London, 427 Mass. 477, 481 (1998) ("The proposition that delay can be a basis for dismissal has been consistently rejected by [the] [c]ourt"), and cases cited. Further, like the hearing committee members, I see no prejudice to the respondent regarding Dr. Jaraki. The respondent could have taken Dr. Jaraki's deposition, but, in any event, had before the hearing committee (which the hearing committee and panel were

able to consider), Dr. Jaraki's sworn affidavit (which was entered as exhibit 6A) and the transcript of Dr. Jaraki's testimony from a March 17, 1995, hearing before a Superior Court judge (entered as exhibit 14), in which questions were posed concerning the substance of that very affidavit noted above. Other prejudice discussed in exhibit C to paper no. 4 as befalling on the respondent was not presented below to the hearing committee or panel, and I, therefore, will not now consider it.

Vindictiveness in sentencing

There is insufficient evidence of "vindictive sentencing" as alleged by the respondent in exhibit C to paper no. 4. I also reject the claim on the ground that it was not argued below to the hearing committee or panel. See Sugarman v. Board of Registration in Medicine, supra at 347 (rejecting claim made on appeal that was not raised below in administrative proceedings), and cases cited.

**Appropriate sanction**

Mindful of the "markedly disparate" standard, see Matter of Bailey, 439 Mass. 134, 149 (2003), I agree with the hearing committee, panel, board, and bar counsel, that a judgment of disbarment is the appropriate sanction for the respondent's conduct. The respondent's conduct of converting his client's funds, by itself, warrants disbarment, as it resulted in an

actual deprivation. See Matter of Bailey, supra at 150 (explaining that disbarment or indefinite suspension is presumption sanction for intentional use of fiduciary funds with either intent to deprive or with actual deprivation resulting, noting that actual deprivation "arises when an attorney's intentional use of a client's funds results in the unavailability of the client's funds after they have become due, and may expose the client to a risk of harm, even if no harm actually occurs"). See also Matter of Bryan, 411 Mass. 288, 291 (1991).

The presumption of disbarment "is bolstered by the seriousness of [the respondent's] additional misconduct," and by the existence of numerous aggravating factors.[6] See Matter of Bailey, supra at 151-152; Matter of Finn, 433 Mass. 418, 424 (2001); Matter of Saab, supra at 315. Particularly unprofessional and egregious was the respondent's conduct to his own clients, including the respondent's conduct in

[6] At the time of the misconduct, the respondent had substantial experience in the practice of law, took advantage of a client who was vulnerable, failed to acknowledge the nature, effects, and implications of his misconduct, persisted in blaming everyone except himself, and continued in making unfounded allegations. While delay in commencing disciplinary proceedings may be considered in mitigation, see Matter of Gross, 435 Mass. 445, 450 (2001), because the respondent did not make a sufficient showing of any prejudice (he could have deposed Dr. Jaraki, and was able to use Dr. Jaraki's affidavit and transcribed testimony from another hearing at the hearing before the hearing committee), I will not consider it a mitigating factor in this case, see id. at 451. There are no other facts in mitigation, save "typical" mitigating factors that would not affect the sanction. See Matter of Alter, 389 Mass. 153, 157 (1983).

misrepresenting to the Nutiles that the court had assessed sanctions against them instead of telling them that he had been sanctioned personally, and then in converting a portion of their settlement proceeds; and in failing to notify opposing counsel in the Malave matter that Malave did not wish to settle her case for the amount to which he had improperly agreed without authorization, in representing Malave when his own interests conflicted with her interests, and in disclosing client communications without authorization. "The relation of an attorney to his client is preeminently confidential. In addition to adequate learning, it demands on the part of the attorney undivided allegiance, a conspicuous degree of faithfulness and disinterestedness, absolute integrity, and utter renunciation of every personal advantage conflicting in any way directly or indirectly with the interests of his client." Opinion of the Justices, 289 Mass. 607, 613 (1935). The respondent's conduct offends these sacred standards. The harm, however, extends beyond those initially affected, his clients, and results in disgracing the profession and undermining the public confidence and trust in the bar. See Matter of Alter, 389 Mass. 153, 156 (1983).

The respondent's conduct toward other counsel and toward two judges in these matters, his numerous misrepresentations verbally and in writing to various courts, and his persistence in

initiating and pursuing frivolous actions, only underscores his inability to faithfully discharge his ethical duties in practicing law in this Commonwealth, and the need, as recommended by both the hearing committee and the board, for his disbarment. See Matter of Finn, supra. Last, this is not a case of isolated misconduct, and the respondent continues to ignore and be unmindful of the wrongfulness of his conduct and certain ethical norms of the profession. See Matter of Eisenhauer, 426 Mass. 448, 456, cert. denied, 524 U.S. 919 (1998); Matter of Clooney, 403 Mass. 654, 657-658 (1988).

Conclusion

A judgment of disbarment shall enter in accordance with this memorandum.

John M. Greaney
Associate Justice

Entered: August 2, 2004