

Matthew Cobb
P.O. Box 2093
Acton, Massachusetts 01720
(978) 985-7523  (cell).

January 10, 2005

The Honorable William G. Young
United States District Court for the District of Massachusetts
John Joseph Moakley Building
1 Courthouse Way
Boston, Massachusetts 02210

Re: In re: Matthew Cobb,  MBD No. 04-10226

Dear Judge Young:

This verified letter, and its accompanying exhibits, constitute my response to your Order
of November 30, 2004, pursuant to L.R. 83.6(2)(D), subsections (i),(ii),(iii), and (iv). I received
the said Order via regular U.S. Mail on December 9, 2004. Pursuant to F.R.Civ.P. 10(c), I
respectfully adopt by reference the exhibits attached hereto in toto. This letter and the said
adopted materials attempt to cover the above said four subsections of L.R. 83.6(2)(D). These
subsections are respectively addressed below.

Note: The Mass. BBO does not consider a respondent's evidence of prosecutorial
misconduct against its prosecuting attorney in a BBO proceeding. Nor of course is the BBO a
proper forum to attack its own statistical results occurring over the last thirty years. This is said
because these two issues, which are here relevant, could not reasonably have been raised before
the BBO.

**Summary of Factual / Legal Position taken by Cobb.**

The State admitted in its so called closing arguments (at Cobb's BBO mater) that the so
called "conversion" charge against him was the only disbarable charge. The record against Cobb
however never had even prima facie evidence (forget credibility) as to any "conversion". To
disbar Cobb for "conversion" in those proceedings violated the substantive due process
provisions of the 14th amendment to the U.S. Constitution. Please see below discussion relative
to **L.R. 83.6(2)(D)(ii).**

The disbarment of Cobb was the culmination of a ten year witch hunt against Cobb for
his protected conduct against Judges Sosman and Gertner.

The Massachusetts lawyer disability system is structurally deficient, and is itself is wholly incapable of producing results consonant with due process of law.

### L.R. 83.6(2)(D)(i) - Due Process of Law (both procedural, and through the incorporation of the 1st Amendment through the Liberty section of the 14th Amendment) .

Free Speech - Exhibit A, pp. 41-51; Exhibit C, pp. 12-13; Exhibit "D", pp. 7-14.

Procedural Due Process - Exhibit A, pp. 51-77; Exhibit "B", pp. 13-31.

The SJC is and was incompetent to Judge these proceedings as against Cobb given its appointment of Rose. Exhibit E.

### L.R. 83.6(2)(D)(ii) - Substantive Due Process

Exhibit A, pp. 24 - 40; Exhibit "B", pp. 7-10; Exhibit "C", pp. 6-8, with exhibits contained and referenced therein; Exhibit "D", pp. 4-7.

### L.R. 83.6(2)(D)(iii) - Excessive Penalty.

Forgetting the dearth of evidence of conversion, and even assuming the SJC's position as factually supported, which it is not, there has never been a case in the history of the SJC where a lawyer was disbarred for "temporary" conversion when the money was repaid years before any BBO inquiry. The totality of the above referenced Exhibits speak sufficiently on this point. Not one red cent was deprived, not for one second. The entire proceedings against Cobb were tainted beyond hope with the combined inclusion of a conversion which did not occur, and punishment for speech of the highest public interests.

### L.R. 83.6(2)(D)(iv) - Misconduct Established

None, apart from the misnomer re: Jaraki's case, which should have been a slap on the wrist in 1995, not a ten years later disbarment. Justice Holmes said it best when he said that "It is the swiftness and certainty of punishment which deters, not its duration".

### Conclusion.

Judges who participate in ex party arranged rigged hearings for the benefit of one party who are callous enough to simultaneously comment on then ignore a disciplinary rule on the record, and/or judges who are prima facie reported to have substantially aided a witness to "forget" relevant testimony in judicial proceedings, ought to be reported, plain and simple. *Landmark*. The Massachusetts Lawyers Oath is certainly not contrary to this tenant and constitutes 14th Amendment safe harbor for the same. Moreover, when the factual basis of the

"conversion" charge is long known to be non-existent, the pursuance of the same allows an inference of bad faith.

Thank you Sir.

Sincerely,

Matthew Cobb

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF _MASSACHUSETTS_

_In Re: Matthew Cobb_
_x_

SUBPOENA IN A CIVIL CASE

TO: _Supreme Judicial Court_
_of Massachusetts_

Case Number:[1]

_MBD    04 - 10226_

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): _In case No. BD 2004 0073,_
_the entire record of proceedings pertaining to the case._

| PLACE _Civil Clerk's Office_ | DATE AND TIME |
|---|---|
| _US District Court, D.Mass, Moakley Courthouse, Boston, MA_ | _JAN. 19, 2005 9 A.M._ |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Matthew Cobb    Matt Cobb_ | _JAN. 3, 2005_ |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
_Matthew Cobb_
_PO Box 1073_    _Hexton, MA 01730_

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

MBD  04 10226  'A'

77 pages

UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

Matthew Cobb,                              )
                                           )        CIVIL ACTION
                                           )
    Plaintiff,                             )
                                           )        04  10390  MLW
vs.                                        )
                                           )
Supreme Judicial Court of the Commonwealth of)
  Massachusetts by and through its         )
  individual members in their respective   )
  Official capacities, Honorable Margaret H. )
  Marshall, C.J., John M. Greaney, J., Francis)
  X. Spina, J., Martha B. Sosman, J., Roderick)
  L. Ireland, J., Judith A. Cowin, J., and )
  Robert J. Cordy, J.                      )


PLAINTIFF'S VERIFIED BRIEF [1] IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND FOR ISSUANCE OF ORDER OF NOTICE

I.    General Overview

      This federal action in equity has been filed to enjoin the

(now reasonably imminent, May 6, 2004) irreparable and permanent

savaging by the state of a man's hard earned reputational Liberty

by permanently branding him through disbarment as a "thief",

while full well knowing, or at least with a blind indifference to

the fact, that not one shred of legally competent evidence exists

in support of any indicted, or even legally cognizable

un-indicted, theft charge, which is admittedly the only so called

disbarable charge in the entire state disciplinary matter.

_____

fn 1 - Please refer to last page.

The reason for the ongoing state judicial proceeding as
against Cobb is proximately due to his protected speech a decade
ago regarding both undisputed actual, and credibly reported,
judicial officer misconduct related to doings in the
Massachusetts state courts, the content of which speech was
either protected, compelled, or otherwise of the utmost public
concern to the fair administration of Justice in the Courts, and
which speech cannot be punished constitutionally by the a state
under any state authority, be it statutory, common law, or Tenth
Amendment inherent reserved power, pursuant to any known First
and/or Fourteenth Amendment rational relation analysis, nor under
any motive ranging from the pure to the perverse. There are no
challenges to any Massachusetts state regulation nor statute in
this matter.

The Massachusetts state lawyer governance system is
structurally deficient, and it, to a statistical certainty,
guarantees guilt simply upon indictment. Acquittals at the
Massachusetts Board of Bar Overseers (BBO) / Supreme Judicial
Court (SJC) in this area are so rare that under United States
Supreme Court Law they are arbitrary. For the period 1974 - 2000,
out of approximately 1750 reported decisions, the system has
acquitted approximately 1.0 % of those it indicts generally, and
approximately 0.0 % of those it indicts for theft sounding
charges heard at the BBO according to the undersigned's research.

The upshot being that once you are indicted on even a minor
charge you are dead in the water on liability in the system, let

Page 2 of  77

alone when indicted for theft. The First Circuit Court of Appeals recognizes the evidentiary value of such statistics in determining a forum's ability to fairly adjudicate issues.

Should this Court believe the state when it predictably here argues that it actions are solely to protect the public from Cobb? To answer this question now is to prejudge the case. We simply need a full record. By rights, the state should have an adequate opportunity to here develop its constitutionally necessary rational link for this "protection" assertion as required by the Supreme Court's Schaware and Landmark cases, supra.

More importantly for the present though, the question becomes why is Cobb here rather than in state court with this great big decade old and still dragging federal constitutional mess? Why can't the Massachusetts courts adequately tackle and/or skillfully avoid the federal constitutional questions lurking herein? What is it that can here justify a federal court's interference with an ongoing state judicial process?

To be sure, relevant Abstention Law of the First Circuit adopts an "action speaks louder" position in these regards when one ponders whether a state high court will address federal constitutional issues seriously, rather than only afford them lip service. See Bettencourt and Brooks, supra. Under this test unfortunately, all indications are, generally, that the Honorable Supreme Judicial Court of Massachusetts will do with Cobb's federal rights protestations exactly as it has with every other federal constitutional argument ever made before it in a BBO

Page 3 of 77

related matter, which is to reject it, and this is before we even reach the so called "bad faith" exception to Younger Abstention, which will trump this consideration if reached.

Cobb is not here saying that this federal court should take this case because he will lose in state court. Whether true or false, the same is irrelevant. Rather, what he is saying abstention wise is that the evidence here overwhelmingly suggests that he - both generally and specifically as to him, has no reasonable chance of having his federal rights fairly determined before the SJC. In fact, it is the state's burden under Younger's, supra, third affirmative prong to show otherwise and its presumption in this regard is lost.

Moreover, Cobb is not here to cast any disrepute whatsoever upon the SJC itself. Being here is of shear necessity, as no sane man would even dream of bringing this case against these Defendants unless he had absolutely no choice of having even a remote chance of saving his unfairly savaged reputational Liberty interests. Cobb possesses a deep conviction that the courts remain the last bastion of hope for those whose world is crumbling before their very eyes. The courts are the great levelers, but courage to do the right thing in court sometimes is a Hobson's Choice indeed and may put one in a pinch at times, as we shall see herein.

But with that immense power must come the responsibility to invariably hold the aim of equity fair and true. There is no judicial officer anywhere that can credibly attest to any instance any time wherein Cobb was intentionally disrespectful to

Page 4 of 77

any judge. Cobb has not sustained jury verdicts in this very building under federal civil rights law against both the state and federal governments by being disrespectful, incompetent, wildly accusatory, nor by even remotely resembling any other tags pinned on him by the Massachusetts Board of Bar Overseers who have been on an almost ten year smear campaign against Cobb in order to divert attention from, and otherwise discredit, Cobb's truth based reports regarding these two judges. Cobb has won these cases because he treated all those involved at those trials with the utmost respect, with admittedly a modicum of skill and luck thrown in for good measure. And he did this while under the Herculean emotional and time consuming strain of this never ending nightmare of being a doomed and otherwise "accused man" at the BBO, something very, very, arbitrarily few lawyers have ever lived to tell about without penalty.

The SJC as a purely state governmental entity itself is not a Party here under the Eleventh Amendment, its individual members are, and are so only in their Official capacities. The generalized integrity of the SJC as a respectable institution in any event speaks for itself, and Cobb is certainly not here to suggest otherwise. However, in the area of lawyer governance, we have problems, huge problems, generally and as applied, which are serious enough to warrant this court's discretionarily tempered intervention into the affairs of a state's judiciary.

Lawyers have a right to know what they are up against, namely, an arbitrary system of Justice all too easily subject to abuse as it has been here. Cobb is no Saint, and he has freely

admitted for years that he made a substantial mistake in the
subject litigation (a misnomer which he should have caught in an
Affidavit of his client which was adopted in a Brief). He has
paid heavily for the same, nine years ago through the present.
But you do not bring capital charges against a man for a
misdemeanor in order to punish or otherwise gain advantage, lest
you risk invalidation of the entire prosecution, as here.

All Cobb asks for here, and is supremely confident of
receiving, is a fair chance at presenting evidence and argument
in support of these important federal constitutional issues -
including the abstention issues. This Brief and/or a hearing on
Preliminary Injunction will demonstrate that he cannot receive
this before the SJC. That's it, win, loose, or draw. When a man's
fundamental right of reputational Liberty is at stake, it's far,
far better for him to have cast his lot where there was
unquestionably a chance of fair adjudication of Law and Truth,
than to once again whimper helplessly as Cobb did for over three
long years at the BBO and will do soon again at the SJC. No
reasonable man possessed with even one-half of the knowledge set
froth in this document alone would give Cobb any, that's any,
chance of such fair legal and factual determination in the
present system of lawyer governance in Massachusetts, let alone a
fair shot at vindicating his federal rights there.

There is nothing the state can plausibly do here to avoid
the core federal constitutional determination of whether the
state's plenary Tenth Amendment powers can trump Cobb's rights
under the First Amendment and Fourteenth Amendments. <u>Pullman</u>,

supra. There is not even one Massachusetts state disciplinary regulation even remotely challenged in this action, and Cobb stands fully prepared to Stipulate that all such existing regulations pass federal constitutional muster for the purposes of this action. Here, we simply need to apply these regulations to the facts, not interpret them. And, independent of this essentially Pullman, supra, state law interpretation issue, here there is sufficient bad faith under Younger, supra, to not abstain in any event.

Timing wise, this case is just now ripe, the BBO having recently been given one last clear chance to finally abandon its reckless and illegally manufactured accusation that Cobb committed "theft", which even it has long known is completely bereft of any competent evidence whatsoever.

Injunctive Relief Criteria

In Cablevision of Boston v. Public Improvement Commission, 38 F. Supp. 2d 46 (1999), this Court held:

> The standard for obtaining a preliminary injunction is
> familiar. Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160
> F.3d 58, 60 (1st Cir. 1998). The burden of proof is on the
> plaintiff. Id.; Equal Employment Opportunity Comm'n v. Astra
> USA, Inc., 94 F.3d 738, 742 (1st Cir. 1996). The court is
> required to weigh four factors. Ross-Simons of Warwick, Inc.
> v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); Astra, 94
> F.3d at 742. The first is whether the plaintiff has shown a
> likelihood of success on the merits. Ross-Simons, 102 F.3d at
> 15. The second is whether the plaintiff has established an
> imminent threat of irreparable harm in the absence of a
> preliminary injunction. Id. The court is also required to
> balance the hardship to the plaintiff if no injunction is
> issued against the hardship to the defendants if the requested
> injunction is ordered. Id. In addition, the court must

consider the effect of the proposed injunction on the public
interest. Id.

As the Court of Appeals for the First Circuit has said on a
number of occasions, the likelihood of success on the merits
is of primary importance. Id. at 16 (citing cases). It is the
sine qua non for obtaining a preliminary injunction. Gately v.
Commissioner of Mass., 2 F.3d 1221, 1225 (1st Cir. 1993);
Weaver v. Henderson, 984 F.2d 11, 12 (1st.Cir. 1993). If a
great showing of likely success on the merits is made by a
plaintiff, a reduced showing of irreparable harm may be
appropriate. Ross-Simons, 102 F.3d at 19; Astra, 94 F.3d at
743.

In addition, a preliminary injunction is an equitable remedy.
Hecht Co. v. Bowles, 321 U.S. 321, 329, 88 L. Ed. 754, 64 S.
Ct. 587 (1944); see also Weinberger v. Romero-Barcelo, 456
U.S. 305, 311, 72 L. Ed. 2d 91, 102 S. Ct. 1798 (1982). It
does not issue automatically even if the foregoing criteria
indicate that an injunction is warranted. Converse Constr. Co.
v. Massachusetts Bay Transp. Auth., 899 F. Supp. 753, 760 (D.
Mass. 1995). Thus, a court may properly consider any
inequitable conduct by the plaintiff. The court may also
consider any adverse impact on the public interest for which a
bond cannot compensate and withhold relief for this reason
alone. Weinberger, 456 U.S. at 312-13; Converse, 899 F. Supp.
at 760.

    In Stanton v. Brunswick School Department, 577 F.Supp. 1560,

1567 (D.Maine.1984), Judge Carter discussed Temporary Relief and

the importance of maintaining the status quo until trial, to wit:

The purpose of preliminary injunctive relief is to preserve
the status quo until a final adjudication can be had upon the
merits. Toledo, A.A. to N.M. Ry. Co. v. Pennsylvania Co., 54
F. 730 (C.C.N.D. Oh. 1893). In framing the terms of a
preliminary injunction the Court is to go no further than is
necessary to preserve the litigating posture of the moving
party and must avoid any unnecessary encroachment upon that of
the adverse party.

    Judge Carter then went on to state that the loss of a

fundamental right will constitute an irreparable injury:

It is well established that the loss of First Amendment

freedoms constitutes irreparable injury. Maceira v. Pagan, 649
F.2d 8, 18 (1st Cir. 1981) (citing Elrod v. Burns, 427 U.S.
347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976)). Id., at
1568-69.

In Nedder v. Rivier College, 908 F. Supp. 66 (D.N.H.1995)
(Devine, SDJ), the Court indicated that proof of a discriminatory
animus would weigh strongly towards likelihood of success on the
merits (although there was none in that case). Moreover, the
Court there held:

> The purpose of a preliminary injunction is to preserve the
> status quo, freezing an existing situation so as to permit the
> trial court, upon full adjudication of the case's merits, more
> effectively to remedy discerned wrongs." CMM Cable Rep., Inc.
> v. Ocean Coast Properties, 48 F.3d 618, 620 (1st Cir. 1995)
> (citing Chalk v. United States Dist. Court, 840 F.2d 701, 704
> (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d
> 1328, 1330 (7th Cir. 1980)). "The court's interim injunctive
> decree attempts to prevent further injury by maintaining the
> status quo, thus enhancing the court's ability, if it
> ultimately finds for the movant, to minimize the harmful
> effects of the defendant's wrongful conduct." Id. (citation
> omitted).

Lastly, in Ladd v. Oxnard, 75 F. 703, 732-33 (Circuit Court,
D.Mass.1896) the then Circuit Court held:

> The real basis of interlocutory injunctions is the maintenance
> of the status quo, as was pointed out by Judge Goff, speaking
> for the circuit court of appeals for the Fourth circuit, in
> Buskirk v. King, 18 C.C.A. 418, 72 Fed. 22, 25. When the
> result is simply to preserve the status quo, it may well be
> said, as was stated in the case cited, that, on an application
> therefor, the complainant "is not required to make out such a
> case as will entitle him to a decree in his favor on final
> hearing, and it sometimes happens that he ultimately fails to
> secure the relief asked for, while, nevertheless, the granting
> of the preliminary injunction was eminently proper."

**Maintenance of the status quo -** Either at or soon after Cobb's
May 6 appearance before a Single Justice of the SJC, Cobb will be

Page 9 of  77

subjected to an order of disbarment solely because of a known 100% false and evidence bereft charge of theft. Based on the statistical gathering set forth herein of the roughly 1750 or so published disciplinary cases from 1974 - 2000 , there is a statistical certainty that SJC will not undo the miscarriage of Justice that has occurred relative to Cobb at the hands of the Massachusetts Office of Bar Counsel (OBC) and BBO, nor give any weight to any federal constitutional argument. As seen herein the SJC has time and again not followed the United States Supreme Court's Directives when it comes to not trampling the federal constitutional due process rights of its lawyers.

Presently there is no order of any sort from the Massachusetts Courts for which this Court's ultimate order could become extricably intertwined with, nor be constituted as an appeal from, these two factors conjunctively invoking jurisdiction depriving Rooker-Feldman abstention. The disbarment will permanently and irreparably deprive Cobb of his fundamental reputational Liberty. Sadly, the "theft" charge was fabricated by the state prosecutor in collusion with the BBO, so as to nail Cobb for his reporting of two extremely popular judge's unethical behavior in 1994 and 1995.

**Imminent and Irreparable Harm** - as set forth herein, "disbarment" is quite the tag. It never goes away, and nobody will ever believe a "disbarred" attorney when he later attempts to say the same was unjustified.

**Probability of Success on the Merits** - as to substantive due process, Cobb wins AMOL. AMOL there is no evidence of theft, the sole disbarment charge. This is no innocent mistake, as Cobb has railed on these state operatives at the OBC / BBO to withdraw this charge after he exposed it for what it was at the "hearings", Bar Counsel finally even admitting in part that the charge was false. The only reason this absurd case could get this far on a disbarment charge is because these people are completely insulated within their system for so long as someone does not expose them to Truth and Justice. As to the First Amendment, Cobb will win on the merits because pretext ("protection of the public from Cobb" and "theft") here is so thinly veiled and irrational, respectively, as to be potentially ruled as incompetent evidence. The justifications for the state's misconduct are simply without factual nor logical, believable basis.

**Balancing the Equities** - there cannot be any meaningful prejudice to the state here to take a time out, since it is the state who has now drug this "process" on for 10 years. As to Cobb, to not grant the injunction equals certain disbarment in a manifestly inept system (see below) without evidence nor hope of repair therefore.

**The Public Interests** - cannot be served by the government hiding its misconduct from the public and/or by shooting the messenger.

Landmark, supra, commands that, AMOL, the public interests are in
fact wholly disserved by such conduct, and this is exactly what is
going on here. It is not in the public interest to punish those
who expose misconduct of public officials.

What is so unbelievable here is that these two judges who
simply made a serious mistake in Judgment, as did Cobb, have
**openly been given a preferred status as judges both in the**
**Massachusetts Courts and at the BBO to not be criticized**,
something illegal in our free society. Landmark and Butterworth,
supra. It is not in the public interests for kids entering law
school in Massachusetts to not know what kind of inept and
arbitrary system subject at times to an unchecked free for all
retaliatory animus will "govern" them once they start their
life's work here, as did Cobb in 1991. People, particularly
lawyers who need to work to eat, have a right to know now, right
now, about this broken down system, lest it will never be fixed
and Cobb will never be its last victim. For the last thirteen
years, Cobb has been busy protecting the public, not stealing
from it.


**Abstention, Collateral Estoppel, and Res Judicata**
**Summary of Abstention Arguments**

Under the principals enunciated in Rooker v. Fidelity Trust
Co., 263 U.S. 413 (1923), District of Columbia Court of Appeals
v. Feldman, 460 U.S. 462 (1982), Younger v. Harris, 401 U.S. 37
(1971); Gibson v. Berryhill, 411 U.S. 564 (1973), Dombroski v.
Pfister, 380 U.S. 479 (1965), Pennzoil Co. v. Texaco, Inc., 481

Page 12 of   77

U.S. 1 (1986), <u>Railroad Commission of Texas v. Pullman Co.</u>, 312
U.S. 496 (1941); <u>Kusper v. Pontikes</u>, 414 U.S. 51 (1973),
<u>Bettencourt v. Board of Registration of Medicine</u>, 904 F.2d 772
(1st.Cir.1990) and <u>Brooks v. New Hampshire Supreme Court</u>, 80 F.3d
633 (1st.Cir.1996), Abstention is not here called for.

First of all, there are several generalized federal
constitutional infirmities in the Massachusetts state lawyer
governance system herein plead. These infirmities grow out of
unconstitutional "administrative" doings involving the
Massachusetts Board of Bar Overseers (BBO) and the Massachusetts
Office of Bar Counsel (OBC or BC). Included in these Counts are
claims for state deprivation of property or Liberty interests
without procedural due process of law in violation of the
Fourteenth Amendment to the United States Constitution. Such
generalized attacks are not properly subject to abstention of any
sort, and are simply here brought by a man who unfortunately has
the required standing under Article III. More specifically, these
generalized Counts go to the longstanding unchecked structural
defects of the BC/BBO/SJC system, such as: guilt being, to a
statistical certainty, predetermined upon indictment with
innocence being so rare that it constitutes under Supreme Court
guidance an arbitrary and capricious event; intentional,
systematic pre-indictment administrative delays of a half decade
or more to gain every advantage and to prejudice the accused; no
statute of limitations; and, lastly, the routine BC/BBO preferred
stacking of wholly disparate charges spanning many years into a
single indictment so that the state can later argue "pattern" or

"conduct as a whole", radically departing from such fairness derived notions as FRE 404(a), and, purposefully, not alleging such terms in the indictment so that they thereby effectively become, post evidence, a new sprung substantive RICO like charge.

Next, and as to the "as applied" theories set forth below, for which the state will predictably argue in favor of abstention, we first take the easy one in this matter:

**Rooker-Feldman** - Legally, there simply is no state judicial order, let alone any final order, currently existing which this Court in this action in any way is being asked to undo (read: reverse), neither directly nor indirectly, or for which this actio could become intertwined with. Rooker-Feldman Abstention goes to this court's subject matter jurisdiction, which, under Article III, is simply not invoked when a federal trial court is essentially being asked to review / reverse / vacate a final state court order, irrespective of whether the said order incorporated questions of federal law which the federal plaintiff seeks adjudication of in federal court. An appeal from such a state court order is limited to an application for certiorari to the United States Supreme Court. Rooker-Feldman Abstention is not discretionary, and there are no grounds whatsoever here for its present invocation, because we are clearly ahead, maybe not by much admittedly, but clearly ahead of any permanently status quo altering state court order which will happen on or after May 6, 2004. However, once the state court rules in the Cobb matter, which of course could be from the bench at the upcoming May 6 hearing, then all bets are off, and, under Rooker-Feldman the

Page 14 of   77

*status quo* between the Parties as to all "as applied" claims herein could change radically because the state can forever thereafter argue under <u>Rooker-Feldman</u> that this court is then sitting improperly as an "appellate" court overseeing that very state court order. (Note: whether the federal plaintiff has an "adequate opportunity" to vindicate his federal rights in the state forum does not in any way enter into the purely jurisdictional <u>Rooker-Feldman</u> analysis. He clearly does not, but that issue is properly addressed below under <u>Younger</u> Abstention).

Next in simplicity to dispense with is the **Doctrine of Pullman Abstention**. Pullman Abstention may only be discretionally invoked when the federal court could plausibly avoid deciding a federal question raised by the federal plaintiff by first allowing the state high court's interpretation of that state law to move forward. <u>Pullman</u> is in essence full deference to the state for the interpretation of its own laws, which interpretation theoretically at least must obviate the need for a federal constitutional analysis for such abstention to be proper. Here, there are no federal constitutional challenges whatsoever, neither "facially" nor "as applied", to any of the operable Massachusetts state disciplinary regulations which were utilized to prosecute Cobb. And, while Cobb admittedly challenges some of the state system's common law practices (i.e., generalized and systematic delays for advantage for instance) the same again are generalized claims not subject to Abstention of any sort, and, furthermore, they of course need no "statutory interpretation" nor any "interpretation" by the state high court.

Page 15 of 77

The upshot here under <u>Pullman</u> is that no interpretation of any sort of state law can here avoid the larger federal question, namely, can a state consistent with the First and Fourteenth Amendments to the U.S. Constitution punish content driven speech whatever its claimed authority, be it statutory, common law, or powers reserved to it under the Tenth Amendment? No issue in this case requires the interpretation of these clear enough disciplinary regulations, only their application to the facts as they exist. Plaintiff is here indifferent to whatever the state claims as its authority to punish, as the same is irrelevant. The larger issue here which cannot be avoided is whether certain speech can be punished, period, by any authority of the state given its protection under federal law. No interpretation of state law can make the issue go away, not for Cobb, and not for his brothers at bar who similarly are at the complete mercy of a truly arbitrary, power ensconced, abusive prone, system of governance, which is more than free to retaliate at will against those in the profession who had the audacity to suggest an untoward doing by a judge, despite such speech's critically high value in the fair administration of Justice (<u>Landmark</u>, <u>Gentile, supra</u>), or despite the obligatory reporting requirements as to such conduct under the Rules discussed below.

Lastly under <u>Pullman</u> any baton pass to the state of this action through outright Dismissal or even through a Stay of Proceedings implicitly assumes that the state court will be able to adequately vindicate Plaintiff's federal claims. Yet this assumption essentially comprises the third prong of Younger

Abstention (i.e., presumption in state's favor of the fair
ability of plaintiff to vindicate federal rights), is not here
met, and is addressed below. The undersigned has not located a
Pullman Abstention case wherein the federal plaintiff raised any
viable claim that the state court handling of his federal rights
would likely be skewed against him based either on its track
record or on some allegesd particularized bias. It's just not the
issue under Pullman, ambiguous and/or overbroad statutes are, and
we have none.

**The State's Affirmative Burden under Younger's Third Prong cannot
be met, and its Presumption of fairness is otherwise destroyed.**

Finally, abstention wise, we hit the Comstock Lode of
Younger. To properly invoke Younger, the state needs to prove
three affirmative elements, the first two (Judicial proceeding
and heavy state interest) here being uncontested. The third
element is typically satisfied by a legal presumption that the
federal plaintiff has an adequate opportunity to vindicate his
federal rights in the state forum, and that presumption is not
destroyed by simply "impassioned rhetoric". But that presumption
is in fact here destroyed by what Judge Selya has twice argued as
critically important in both lawyer and doctor related licensing
/ Younger abstention cases, (Bentencourt and Brooks, supra,)
namely, that only a track record of action in seriously
considering the federal rights of its citizens, not simply lip
service, by the state's high court informs the decision as to
whethera Plaintiff had an "adequate opportunity" to vindicate his
federal rights there.

Page 17 of  77

Unfortunately, here, out of the approximately twenty plus federal constitutional challenges to doings at the BC/BBO - including the punishing of a lawyer for an act sixteen years prior and including a completely superficial reading of the Supreme Court's <u>Ruffalo</u>, infra, case used to sustain a indictments manifestly violating the Rule of <u>Ruffalo</u>, the Supreme Judicial Court of Massachusetts has a sum total of zero reversals of the BC/BBO doings on federal constitutional grounds for thirty years. It's not like valid challenges were never made. So, according to Judge Selya, we use this history to make the prediction as to whether the federal plaintiff has an adequate opportunity to vindicate federal rights. Under this predictor, it takes not a Rhodes Scholar to guess the outcome of the next such federal constitutional challenge before the SJC, generally.

In continuing with the <u>Younger</u> third prong analysis, we have yet a far stronger predictor that **Cobb himself** will not have an "adequate opportunity" (read: fairness) to raise his federal claims before the SJC if this court does not act. Why so? Well, the same judge that Cobb accused of bias some ten years ago - essentially the first pebble which exponentially became a landslide of character assassination and content based reprisal both in the Massachusetts state courts and the BC/BBO as against him as more fully developed herein - now sits on the SJC as a Justice.

Undisputedly, again as more fully developed below, a substantial portion of the subject state prosecution as against Cobb rests on the actual CONTENT of Cobb's allegation as against

Page 18 of   77

that very judge - not how, not when, not where, not even why, the statement was made. However, it remains ten years on wholly uncontested as below that the said then judge then openly allowed and encouraged Cobb's well healed and influential lawyer adversaries from Nutter, McClennen & Fish in open court no less to commit clear ethical violations before her over Cobb's objections on the court record to the clear disadvantage of Cobb's then client.

This foul play just so happened to occur on the heals of the said judge having taken the case from the then assigned Session judge at the behest of the said lawyers, *ex parte*, without ever disclosing the same to Cobb TO THIS DAY. When Cobb attempted to call the Judge before the BBO to explain her misconduct and to therefore show that what Cobb had said was certainly supportable in fact as to a reasonable inference of bias, he was blocked both by the Judge's lawyers (Massachusetts Attorney General) and by a ruling at the BBO which said that her knowledge of this misconduct was, unbelievably, irrelevant. So, we already can predict what the SJC will do with this case, namely, make irrelevant one of the seminal issues therein relating to content based protected speech, even though in First Amendment cases Cobb is entitled constitutionally to develop such a record as seen below. Namely, avoid the inquiries as to the fact that what Cobb said **was truth based,** was of the utmost public concern, did not present any clear and present danger to the administration of Justice (in fact, quite the opposite under <u>Landmark</u>) by simply claiming the same was "irrelevant" to Cobb's accusations.

Page 19 of   77

This is not to suggest that the ex-judge, present Justice's presence as above on the SJC constitutes any absolute bar to that court hearing the matter of Cobb's discipline for saying she was biased and potentially influenced simply as judges by her actions. However, it certainly does not reasonably help Cobb's chances when the prior conduct under the judicial code of a trusted colleague on the court is to be judged by her court colleagues, as it must be under First Amendment Law as set forth below entitling Cobb to develop just such a record.

The court we can assume already has an obviously high view of its sister Justice's ethical mores and character, and any attack upon the same will likely be met, as it has invariably thus far, with more content based reprisal, not a truly objective analysis. Of course, you cannot kill a man who is already dead, the undersigned having spent the last three years winding down his practice in anticipation of this fight. And that's the reason Cobb is here now. Stated differently, no sane man knowing even half the information in this document would bring this case against these defendants unless he had absolutely no other choice on this planet to save his reputation from the permanent scar waiting with his name on it. But, as seen below, the facts clearly suggesting an "as applied" specific bias by the SJC as against Cobb in this matter go straight from the frying pan into the fire.

In Fall of 1995, the first of the three disciplinary matters which comprise this lawsuit was instigated "informally", with Cobb's undisputed prompt attention thereto. This first

Page 20 of  77

matter was one wherein a judge was reported under Cobb's state
ethical requirement to report *prima facie* conduct which might be
prejudicial to the administration of justice. The report occurred
within then in ongoing litigation in the Massachusetts courts.
Now, soon after, in early 1996, and some five years before the
intentionally delayed indictment came down, Cobb had sought
admission to the U.S. Supreme Court. He then had every
qualification, and was building a growing practice. This was a
practice founded on Cobb's core legitimate, political beliefs
that all tortfeasors who he agreed to prosecute in the courts
were to be treated on an equal footing, not as a function of
their potentially high position in either society or government
or both.

By this time, Cobb had already: raised federal civil rights
claims against the Governor and Lieutenant Governor which,
although not ultimately successful, were certainly non-frivolous
and are reported; successfully prosecuted one of the most
prominent law firms in New England under civil RICO; sustained
under Rule 12 via reported opinion what may still be the shortest
known Hobbs Act RICO pattern in these United States, sustained
cases under Rule 12 pursuant to both Title IX and Title VII for
same sex sexual harassment, the last such opinion emanating from
this very session, and he had otherwise served unequivocal notice
in the courts and in the media that he would take the hard cases
that nobody wanted as against those with money and power if the
law so required. He by all accounts was  - and still is -
according to the BBO, a member in good standing with the

Massachusetts Bar.

Yet, when he then personally went to the Clerk's Office of the SJC to obtain the required Certificate in Good Standing to submit to the U.S. Supreme Court, he was summarily Denied the Certificate, notwithstanding the fact that he was in good standing. Upon further inquiry, Cobb learned several days later, again in person and from the Clerk, that the Certificate would not issue for so long as the BBO "matter" was pending. Cobb went ahead though and submitted the application the Supreme Court. Some time later, most likely a week or so, Cobb spoke to the Clerk of the Supreme Court, who said that he had made inquiry and was told by the SJC that it would not issue the Certificate because of the pending mater(s) before the BBO (one involving the report of the judge, the other, a baseless, non-speech related claim soon dismissed). Now, in view of the fact that Cobb at all times was a member in good standing, he was deserved of the certificate, and the summary denial of the same is an inference of a bias exhibited towards him, even then, by the SJC.

But the worst of the specific bias, indeed, a rank appearance of unfairness, from the SJC towards Cobb of late was its appointment of one of the state's key witnesses (a "victim" of Cobb, no less) at the BBO to the BBO itself WHILE COBB'S PROCEEDINGS WERE STILL ONGOING AND BEFORE THE BBO PASSED JUDGMENT ON THE MATTER.

It is neigh impossible to say what a far reaching signal such an appointment would be to the gentleman's (Mr. Rose) colleagues on the Board. He is given the Official State high

Page 22 of   77

court stamp of ethical approval, meaning his track record is
devoid of ethical misconduct. Yet part of the issued addressed in
the Cobb matter impinged greatly upon his and his law partner's
undisputed unethical conduct which the then trial judge freely
allowed and encouraged. The Board could therefore rest assured,
as it did when recommending disbarment, that everything said by
Cobb about Rose, his partner, Blute, and the judge must be folly,
since ITS ADMITTED SUPERVISOR, THE SJC, had said beyond purview
that this man, and implicitly his then law firm and partners, has
always been beyond ethical reproach.

This also certainly infers that the here subject then trial
judge did nothing wrong ethically. It was now certified without
bothering with taking evidence as to this point at the very BBO
hearing she had then avoided attending that was no ethical
violation then ongoing before her, and, therefore, Cobb's
reasonable inference of bias was not.

The undersigned has seen some quite skillful ploys in
litigation in his all too brief tenure in the law in this fine
City, but this one deserves top Honors because it is truly in a
class by itself. Should the SJC and Rose have waited until *after*
these proceeding were concluded to make and accept this
appointment? Yes, that is if either of them actually cared about
the appearance of impropriety or the rank prejudice that this
could have as against Cobb. An accused pedophile in Massachusetts
is treated with more dignity than an accused lawyer who finds
himself trapped in a ten year emotionally agonizing boxcar trip
to disbarment before the BBO on retaliatorily motivated charges,

Page 23 of  77

let alone one who sounded the whistle at the starting gate.

**Younger Abstention Exceptions (bad faith)** - these are the same as the substantive claims set forth below.

## Collateral Estoppel and Res Judicata in specific regards to claims of deprivation of First Amendment Rights.

We have held that "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984).

Cobb did not get a fair chance in the state system at the BBO to create such a record to show that his speech was **prima facie** truth based (although the record certainly contains prima facie truth on this point), either because of the BBO's specific ruling that the Judge need not testify as above, or because of the allowance of the other judge in question to testify on matters which the BBO specifically used to block the first such judge's testimony when it was in Cobb's favor.

If raised as a defense, these matters will be more fully elaborated upon in due course.

### Substantive Due Process

**Overview** - The reckless allegation of "theft" for which disbarment is admittedly solely based upon was fabricated from the outset, and this fabrication was manifestly exposed and at least partially admitted to by the state at the so called BBO "hearing". The state continued to move forward on another Liberty

wrecking charge of "theft", however post exposure and admission as above of its first "theft" fabrication. This was done post closure of evidence, and without indictment therefore, by simply then re-casting orally during closing argument no less another "theft" theory which was diametrically opposed to and otherwise legally and factually irreconcilable with its discarded indicted theory no less. The re-cast theory was and remains unsupported by even a scintilla of competent evidence.

DISBARMENT by the state shakes, indeed uproots, the very foundation of one's life long Liberty interest in his reputation. It's destroyed by this label, plain and simple, and effectively forever. The term itself is perhaps the most reputation destroying and employment preventing label short of "World War II Nazi Party Official" or "convicted repeat pedophile sexual predator" known to mankind outside the prison walls, and maybe even within. When one hears of a disbarred attorney, who ever really inquires as to what for? It's presumed he most likely stole money from his clients, and lots of it. It's presumed that whatever he claims post branding as to his innocence will be seriously discounted by society. Most telling, it's presumed that he was fairly judged, and that is the nucleus of the problem in this case. It is truly the essence of one's Liberty to not be so unfairly savaged in his reputation by the state. And this is simply because there is no interest more important to a man than his reputation.

Although the words "substantive due process" are not therein found, a good starting place for this discussion is <u>Schware v.</u>

Page 25 of  77