C)    A prohibitory Permanent Injunction as to all the above, and a permanent mandatory injunction directing that all disciplinary references / disbarment references to be disassociated with and otherwise removed from the SJC and BBO websites as pertains to Cobb, and

D)    such other relief as the Court deems fit.


Respectfully Submitted to this Honorable Court by:


_____
Matthew Cobb, pro se
P.O. Box 2093
Acton, Massachusetts 01720
(617) 357-7300
cell(978) 985-7523

**Verification** – I, Matthew Cobb, under pains and penalties swear that the Facts set forth above are true to the best of my knowledge and personal observation. I cannot attest to the above Opinions, nor some of the stated inferences or arguments. But the facts described I stand by so help me God. This 30th day of August, 2004.

_____
Matthew Cobb

34

UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

Matthew Cobb,                          )
                                       )        CIVIL ACTION
        Plaintiff,                     )
                                       )        04  10390  MLW
vs.                                    )
                                       )
Supreme Judicial Court, et al.,        )
                                       )
        Defendants

PLAINTIFF'S REPLY BRIEF
<u>RE: DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR TRO.</u>

        Now comes the Plaintiff, Matthew Cobb, and, for his Reply to

Defendants' Opposition to Plaintiff's Renewed Motion for

Temporary Restraining Order respectfully submits that:


Reply Issue No. 1 -

        In the case of <u>Johnson v. BBO, et al.</u>, 2004 U.S. Dist. LEXIS

9520, May 26, 2004 (C.J., William G. Young), Exhibit "G" hereto,

the Massachusetts Attorney general on behalf of the BBO, Bar

Counsel, and the Commonwealth of Massachusetts, has argued that

"the ongoing state disciplinary action is judicial in nature".

See No. 03-12314, Defendant's Memorandum in Support of Motion to

Dismiss, at p. 4. This is a correct position on the Law under

<u>Middlesex County Ethics Committee v. Garden State Bar</u>

<u>Association</u>, 457 U.S. 423 (1982). <u>Middlesex</u>, as seen below,

however is premised upon the notion that State lawyer

Page 1 of  13

disciplinary proceedings while appearing "administrative" are in fact judicial, since the High Court of each of these United States is "responsible" for all that goes on in the ostensibly administrative proceedings. As such, to argue that such proceedings in the Johnson matter were "judicial" is to accept the premise of <u>Middlesex</u>.

Here, all of a sudden Cobb is claimed to have a fatal fault by not naming the BBO / Bar Counsel to these proceedings. The reasoning is that the SJC is not responsible for what the BBO / Bar Counsel did. Cobb removed the BBO and Bar Counsel from this action by dent of his Amended Complaint as a matter of course. The reason why they were removed is because the undersigned finally understood what <u>Middlesex</u> actually meant in this connection. Namely, that we need not "attribute" the conduct of the BBO / Bar Counsel to the SJC because *as a matter of Law* the U.S. Supreme Court has held that such State Court is "responsible" for all done at these administrative proceedings.

In our democratic society  - state or federal - the three co-equal branches of government (executive, judicial, and legislative) are not political subdivisions and/or agencies of the government to which they belong, rather, they are *ipso facto* the government. Such a democratic government as we know it does not exist but for its three co-equal branches. There is no Super entity which rules over the said three branches within their own

sovereign sphere as such, nor could there be lest we dispense
forever with the notion of checks and balances.

Here we are dealing with the Massachusetts High Court, and,
therefore, with the State of Massachusetts itself, both legally
and practically. If this point be not otherwise inherently
obvious from the democratic structure of the Massachusetts
Government itself, then we can turn to <u>Middlesex County Ethics
Committee v. Garden State Bar Association</u>, 457 U.S. 423 (1982),
wherein the U.S. Supreme Court held that a State's High Judiciary
was fundamentally and unqualifiedly responsible for all acts -
whether couched as administrative or not - done in lawyer
disciplinary proceedings. Apart from acts done by the SJC
Justices themselves here which are independent of the present
attributional analysis, <u>Middlesex</u> permeates this entire case
since it lays the blame (read: responsibility) for the known
unconscionable acts of the SJC's manifestly authorized staff (BBO
/ Bar Counsel) squarely where it by rights belongs, at the SJC's,
and, hence, the State of Massachusetts' doorstep. To wit at id.,
433-(1982), the Court held that:

> The New Jersey Supreme Court has made clear that filing a
> complaint with the local Ethics and Grievance Committee "is
> in effect a filing with the Supreme Court . . . ." Toft v.
> Ketchum, 18 N. J. 280, 284, 113 A. 2d 671, 674, cert.
> denied, 350 U.S. 887 (1955). "From the very beginning a
> disciplinary proceeding is judicial in nature, initiated by
> filing a complaint with an ethics and grievance committee."
> n12 18 N. J., at 284, 113 A. 2d, at 674. It is clear beyond

doubt that the New Jersey Supreme Court considers its bar
disciplinary proceedings as "judicial in nature." n13 As
such, the proceedings are of a character to warrant
federal-court deference. The remaining inquiries are
whether important state interests are implicated so as to
warrant federal-court abstention and whether the federal
plaintiff has an adequate opportunity to present the
federal challenge.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - -
- - - - - - - - - -

n11 See M. Shoaf, State Disciplinary Enforcement Systems
Structural Survey (ABA National Center for Professional
Responsibility 1980).
The New Jersey allocation of responsibility is consistent
with ?  2.1 of the ABA Standards for Lawyer Discipline and
Disability Proceedings (Proposed Draft 1978), which states
that the "[ultimate] and exclusive responsibility within a
state for the structure and administration of the lawyer
discipline and disability system and the disposition of
individual cases is within the inherent power of the
highest court of the state."
The rationale for vesting responsibility with the judiciary
is that the practice of law "is so directly connected and
bound up with the exercise of judicial power and the
administration of justice that the right to define and
regulate it naturally and logically belongs to the judicial
department." Id., commentary to ?  2.1.
n12 The New Jersey Supreme Court has concluded that bar
disciplinary proceedings are neither criminal nor civil in
nature, but rather are sui generis.  In re Logan, 70 N. J.
222, 358 A. 2d 787 (1976). See also ABA Standards for
Lawyer Discipline and Disability Proceedings ?  1.2
(Proposed Draft 1978).  As recognized in Juidice v. Vail,
430 U.S. 327 (1977), however, whether the proceeding "is
labeled civil, quasi-criminal, or criminal in nature," the
salient fact is whether federal-court interference would
unduly interfere with the legitimate activities of the
state.  Id., at 335-336.
The instant case arose before the 1978 rule change.  In
1978 the New Jersey Supreme Court established a
Disciplinary Review Board charged with review of findings
of District Ethics Committees.  Nothing in this rule
change, however, altered the nature of such proceedings.
The responsibility under Art. 6, ?  2, para. 3, remains
with the New Jersey Supreme Court.
n13 The role of local ethics or bar association committees
may be analogized to the function of a special master.

Anonymous v. Association of Bar of City of New York, 515
F.2d 427 (CA2), cert. denied, 423 U.S. 863 (1975). The
essentially judicial nature of disciplinary actions in New
Jersey has been recognized previously by the federal
courts.

The reason why State Judiciaries under <u>Middlesex</u>, supra,
are "responsible" for all such acts is because they are receiving
the clear benefit of near complete autonomy  (causing Younger
Abstention to therefore become applicable) in their stem to stern
regulation of lawyer disciplinary proceedings as "judicial". The
entire basis for the Rule in <u>Middlesex</u> was grounded upon this
"responsibility", used as it were to rationalize treating as
"judicial" what were previously deemed "administrative" doings of
the various State entities regulating the practice of Law. This
Rule is certainly consistent with the fundamental notion that for
every benefit there must always be an obligation. So, the acts of
the SJC itself, either directly or by and through the doings of
its lawyer governance system, all are "judicial" acts, for which
it is responsible.

Reply Issue No. 2 -

Despite Plaintiff's continued open invitation to do so, and
despite what appeared to be an unqualified representation(s) to
this Court on May 5, 2004 by the Defendants that the Honorable
Single Justice of the SJC would consider all federal issues which
Cobb had then raised at the said May 5, 2004 hearing, Defendants

have again completely ignored and avoided the core and exclusive disbarment issue in this matter. Namely, the alleged "theft" and their complete lack of a *prima facie* case relating thereto. As this Court stated on May 5, 2004, it then lacked sufficient evidentiary materials to then make an informed decision. As such, Plaintiff has constructed a hopefully helpful, documented supported, and undisputed time line showing that at no time did he ever even temporarily possess any money of his client in a wrongful or unauthorized fashion, something which the Defense in this matter has all but acquiesced to through such continued avoidance of this controlling issue. These are represented by the attached Exhibits "A" – "F", and "H".

"A" –      This was the Order ordering Cobb to pay personally a
           four thousand dollar sanction, dated 8/12/94. It is
           uncontested on the BBO record that Cobb's clients had
           both been present at a 2/2/94 hearing where the Judge
           had said at least two or three times clearly that it
           was going to be Cobb, and not his client, who should
           pay.

"B' –      Single Justice Lawrence's Order, specifically under
           MRAP 25, which does not authorize sanctions against the
           lawyer, dated October 20, 1994. This is when Cobb's

client's obligation to pay undisputedly accrued. The BBO / Bar Counsel, and now even the Single Justice have finally all acquiesced (by no longer pursuing any notion that the Order was specific to Cobb) to the fact that this Order was not against Cobb, specifically nor by implication.

"C" -    Superior Court Judge Herman Smith's Order of April 28, 1995, specifically enforcing both of the above orders, then simply putting a time certain on the payments to be made by both Cobb (Via Judge Sosman's Order) and "Cobb's Client" (via Justice Lawrence). It is uncontested that this payment as below was properly made under this order.

"D" -    The Check from Cobb's client which was used to defray the sanction payment then made as below, dated April 28, 2004.

"E" -    Payment communication with attached payment pursuant to Judge Smith's Order as above, dated June 25, 1995.

"F" -    Full Panel Appeals Court Decision. The last paragraph of the decision apparently is what caused this entire mess, as Bar Counsel assumed that there was such an Order specifically directing Cobb to pay the Justice Lawrence Sanction. This was addressed in detail in Cobb's Brief in Support of TRO, filed in April 2004,

which is adopted herein by reference pursuant to
F.R.Civ.P. 10(c). A court cannot "affirm" that which
never occurred, among other arguments there made.

"H" –     Bar Counsel's sworn admission that she had no clue
before publically calling Cobb a thief that the Smith
Order as above existed, nor that there was not any
Order (as she alleged in the indictment) of the Single
Appeals Justice Ordering Cobb to make such payment.

This case is not against a municipality under § 1983, which
the Supreme Court there allowed in a federal Court under limited
conditions. If Monell did have any bearing here, then we could
treat the SJC, the BBO, and the OBC, all as entity Parties, and
we would view their conduct under a typical Monell analysis
focusing on deliberate indifference, custom, policy, and moving
force. See Gonsalves v. City of New Bedford, 939 F. Supp. 915
(D.MA.1996), FN 3. Rather, this is an action brought under the
principal of Ex Parte Young, 209 U.S. 123 (1908), for prospective
injunctive relief against government Officials solely in their
capacity as such.

The state argues on the one hand that the non-inclusion of
the BBO and OBC is somehow fatal to Cobb's claims, yet it
certainly already knows that the BBO and the OBC (as
institutional Defendants created by legislative act of the SJC

like the IOLTA Committee was) are not considered proper parties

here under the 11th Amendment to the United States Constitution.

*See* the related <u>Citizens for the Preservation of Constitutional</u>

<u>Rights v. SJC</u> matter, No. 02-10125, MLW, wherein the SJC there

acquiesced that the said IOLTA Committee for the same reason was

not a proper Party under <u>Pennhurst v. State School & Hospital v.</u>

<u>Halderman</u>, 465 U.S. 89 (1984).

What we are really looking at here is whether the SJC may on

the one hand through Legislative Act create the BBO and the OBC

to aid it in effecting its sole and unquestioned authority to

regulate the practice of law, while on the other hand, then turn

a blind eye to either or both the specific or general practices

of those entities, then claiming that the victim must prove

"vicarious liability". While it is true that a state judiciary

may unquestionably delegate these functions to the BBO /OBC which

inherently and exclusively belonging to it, it cannot thereby lay

claim to any level whatsoever of non-responsibility for their

doings. And the reason is quite simple in the Law, namely, that

they are all one in the same.

In <u>Middlesex Co. Ethics Committee v. Garden State Bar</u>

<u>Association</u>, 457 U.S. 423, 433-34 (1982), the Court held that:

The New Jersey Supreme Court has made clear that filing a
complaint with the local Ethics and Grievance Committee **"is in
effect a filing with the Supreme Court . . . ."** Toft v. Ketchum,
18 N. J. 280, 284, 113 A. 2d 671, 674, cert. denied, 350 U.S. 887

Page 9 of  13

(1955). "From the very beginning a disciplinary proceeding is
judicial in nature, initiated by filing a complaint with an
ethics and grievance committee." n12 18 N. J., at 284, 113 A. 2d,
at 674. It is clear beyond doubt that the New Jersey Supreme
Court considers its bar disciplinary proceedings as "judicial in
nature." n13.  As such, the proceedings are of a character to
warrant federal-court deference.  The remaining inquiries are
whether important state interests are implicated so as to warrant
federal-court abstention and whether the federal plaintiff has an
adequate opportunity to present the federal challenge.

  n11 See M. Shoaf, State Disciplinary Enforcement Systems
  Structural Survey (ABA National Center for Professional
  Responsibility 1980).

  The New Jersey **allocation of responsibility is consistent
  with § 2.1 of the ABA Standards for Lawyer Discipline** and
  Disability Proceedings (Proposed Draft 1978), which states
  that the **"[ultimate] and exclusive responsibility within a
  state for the structure and administration of the lawyer
  discipline and disability system and the disposition of
  individual cases is within the inherent power of the highest
  court of the state."**

  The rationale for **vesting responsibility with the judiciary**
  is that the practice of law "is so directly connected and
  bound up with the exercise of judicial power and the
  administration of justice that the right to define and
  regulate it naturally and logically belongs to the judicial
  department." Id., commentary to § 2.1.


  With every right in the Law, there is always a

responsibility. If Middlesex stands for anything, it is that

whatever proper and fitting cloak is thrown over the ways that a

state judiciary may regulate the practice of law - by creating

entities or even by farming out the fact finding determination to

existing bodies wholly without the Judicial function - the fact

remains that the judiciary and only the judiciary is responsible

for this function. The buck stops at the SJC.

The above is not vicarious responsibility, rather, it the recognition that the OBC and BBO's acts are the acts of the SJC *ipso facto*. What Cobb therefore asks for here is enjoinment of the SJC as captioned to prevent it from sustaining wholly unconstitutional doings by a thing or things it created and for which it is 100% responsible, because under <u>Middlesex</u>, they are as a matter of law the acts of the SJC itself.

Moreover, and as to the non-inclusion of BBO Committee Members themselves as Parties hereto in their Official Capacities, there is no statutory authority or otherwise for them to do anything which could undo their recent adoption of the doings of the "hearing committee" and the "Appeal panel" of the BBO. If Cobb **had** included them no doubt would the state then claim that **they** were not vicariously liable for the doings of **their** underlings so to speak at the "hearing committee" and the "Appeal panel" levels.

More importantly, it is here material to bad faith that the BBO itself was given a last, clear, unequivocal opportunity to belatedly withdraw the false name destroying theft charge which it knew to be false, or that Cobb would take this action. Little doubt that had Cobb sought to enjoin these BBO members prior to their recent actions, he would be met with the same argument as here, namely, that Cobb simply did not give them a chance to act just like he has allegedly not given the SJC a chance to act.

Page 11 of  13

Under Middlesex, since the entire proceedings stem to stern are "judicial" then all of the exact same Younger considerations came into play anyway from the outset and it is irrelevant therefore when the federal action moves in, except as to likelihood of success on the merits of the BBO well knowing and refusing to subtract a false theft claim which Cobb reasonably believed it could do, even when they were alerted that the same rode upon a BC'c / BBO "hearing committee" or "appeal panel" "finding" of a supposed state court hearing which never even occurred and for which the record was bereft of evidence wise.

Cobb would not filed this case if only his practice was destroyed which has occurred even without the withdrawal of the theft charge, as that practice has wound down for the last 39 months. He is here to save the unconscionable complete and utter destruction of his reputation by **the state judiciary** to punish him for criticizing **those within the judiciary**, a right protected under the First Amendment to the U.S. Constitution as briefed. If Landmark, Gentile, and Butterworth, all cited in Cobb's April Moving Brief, stand for anything, it is that no public official, particularly a judge or a lawyer as officer of the court, attains any preferred status whatsoever from truth based public criticism that their deeds were prejudicial to the administration of justice, **and that** hiding these deeds or shooting the messenger who reports them is AMOL prejudicial to the fair administration

Page 12 of   13

of Justice.  All Cobb did for which he now stands disbarred by
the state was to do what he was taught to do all his life and in
law school to do, namely, stand up for your rights under the
constitution even when it hurts to stand.


 Respectfully submitted,




Matthew Cobb
P.O. Box 2093
Acton, Massachusetts 01720
(617) 357-7300 or (978) 985-7523 (cell)

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
Civil Action No. 93-7134-F

JANE DOE,

    Plaintiff,

v.

NUTTER, MCCLENNEN & FISH,
ALAN D. ROSE, SOUTH SHORE
NEUROLOGY ASSOCIATES, INC.,
MICHAEL HAYES, M.D.,

    Defendants.

*[handwritten annotations at top right:]* No tify

*[handwritten:]* 8/12/94 Allowed. The action against Nutter, McClennen + Fish and Rose was patently lacking in any even arguable merit. The legal research demonstrating that lack of any viable cause of action was presented to plaintiff's counsel prior to the filing of the action. Plaintiff's counsel pursued the action for the apparent purpose of depriving defendant South Shore Neurology Associates of its chosen counsel. As a sanction, the court awards defendants + to ... in attorney's fees said fees to be paid by plaintiff's counsel (and not directly or indirectly passed on to plaintiff). Wolf, J.

MOTION FOR SANCTIONS PURSUANT TO
G.L.c. 231, §6F AND MASS. R. CIV. P. 11

    Defendants Nutter, McClennen & Fish ("NMF") and Alan D. Rose ("Rose") move that the Court award the defendants the costs and attorneys' fees incurred in connection with the defense of this claim. Such sanctions are authorized by G.L. c. 231 §6F, Mass.R.Civ.P. 11 and the inherent power of this Court to control the conduct of attorneys who practice before it.

    As grounds for this motion, defendants state as follows:

    1.    The claims asserted against Rose and NMF are baseless and frivolous and plaintiff's counsel has willfully violated Rule 11 by filing a Complaint that he knows is unsupportable as a matter of law and of fact. Plaintiff's counsel's conduct has been for improper purposes, namely, to interfere with NMF's and

*[handwritten:]* Entry Date of

*[handwritten circled:]* 59



COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

94-J-697

JEAN NUTILE & another.[1]

vs.

NUTTER, McCLENNEN & FISH & others.[2]

ORDER

I agree with counsel for the petitioners that the transmission of a copy of a response to a c. 93A demand letter from the demandant's counsel to the demandant himself appears to be a violation of SJC Rule 3:07, DR 7-104(A)(1), <u>Theran</u> v. <u>Rokoff</u>, 413 Mass. 590 (1992), not being to the contrary.

That said, I nonetheless <u>deny</u> the relief sought by the petitioners in their September 29, 1994, petition pursuant to G. L. c. 231, § 118, par. 1, and motion to stay, substantially for the reasons set forth in the October 14, 1994, opposition filed by the lawyer respondents and for the added reason that the petitioners have failed to demonstrate, clearly and persuasively, any error of law or abuse of discretion by the motion judge in connection with the dismissal, the impoundment, or the imposed sanction.

_____

[1] Richard Nutile.

[2] Alan D. Rose, South Shore Neurology Associates, Inc., & Michael T. Hayes.

I also agree with the lawyer respondents that the petition is not only scandalous and impertinent but also frivolous, in the sense of being devoid of any rational or supportable basis in fact or law, to the extent it accuses the judge of bias, unethical conduct, and inappropriate susceptibility to unspecified illegitimate influence of the lawyer respondents. I therefore award those respondents, pursuant to Mass.R.A.P. 25, double costs and damages in the amount of the value of the professional legal time required to respond to the petition and motion to stay, to be established by an affidavit and copies of contemporary time records submitted to the single justice within one week of the entry of this order.

<u>So ordered</u>.

By the Court (Laurence, J.),

*Rena M. Wang*

*Asst.*/Clerk

Entered: October 20, 1994.

APPEALS COURT

Date: 8/30/01
A true copy,
ATTEST: _____
Assistant Clerk

2



IMPOUNDED

"C"

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:
                                          SUPERIOR COURT
                                          CIVIL ACTION
                                          NO: 93-07134-F

JEAN NUTILE,

Plaintiff

vs.

NUTTER, MCCLENNEN & FISH, ALAN D.
ROSE, SOUTH SHORE NEUROLOGY
ASSOCIATES, INC., AND MICHAEL T. HAYES,
M.D.,

Defendants

ORDERS

1.      The Court allows the **Motion For Entry of Separate and Final
Judgment** filed by defendants Nutter, McClennen & Fish (hereinafter "NMF") and
Alan D. Rose (hereinafter "Rose"). In light of the dismissal of all of the plaintiff's
claims against defendants NMF and Rose and in light of the motion session judge's
finding that the claims were frivolous, which finding was affirmed by the Appeals
Court, this court finds that there is no just reason for delay in the entry of separate
and final judgment.

2.      NMF's and Rose's **Motion For an Order Striking the Names of
NMF and Rose From the Caption** is allowed.

3.      The plaintiff has not paid either the sanction of $4,000 in attorney's
fees (to be paid by plaintiff's attorney), ordered by Judge Sosman in her August 12,
1994 Order or the additional sanction of $3,244.50 in attorney's fees ordered by the
Appeals Court in its November 21, 1994 Order. This Court hereby Orders plaintiff's

~~~er,
~ Fish, Alan D.
~outh Shore Neurology
~~ssociates, Inc., and Michael
T. Hayes, M.D.

– 2 –

93-07134-F

attorney, Matthew Cobb, to pay, pursuant to Judge Sosman's August 12, 1994

Order, the $4,000 sanction plus interest to defendants NMF and Rose by May 31,

1995. In addition, the Court hereby Orders the plaintiff to pay, pursuant to the

Single Justice's November 21, 1994 Order, the $3,244.50 sanction plus interest to

defendants NMF and Rose by May 31, 1995.

    4.    The plaintiff's **Motion For A Stay of the Attorney's Fee Award** is

denied.

DATED:    April 28, 1995

SO ORDERED.

Herman J. Smith, Jr.
Justice of the Superior Court

c:\w4w\superior.ct\suffolk\cv93\cv07134a.doc

"D"

**RICHARD NUTILE**
**JEAN NUTILE**
127 HAMPTON CIRCLE
HULL, MA 02045

1723

53-7198/2113

Pay to the
Order of _ATTY. MATHEW Cobb_ | $ _2000 ⁰⁰_

_Two Thousand only_ ———————— Dollars

HULL CO-OPERATIVE BANK
HULL, MASSACHUSETTS 02045

For _Saccorone_

⑈:2113719841:801002 110 3⑈ 1723 ⑈0000200000⑈

*Nutter, McClennen* *Re: Firm - Nutle*
*Nutle* *Litigation*

'E'

**LAW FIRM OF MATTHEW COBB**
**101 TREMONT STREET**
**BOSTON, MASSACHUSETTS 02108**

TELEPHONE
(617) 357-7300

FACSIMILE
(617) 451-1991

June 25, 1995    29

**VIA CERTIFIED MAIL**
Joseph Blute, Esquire
Nutter, McClennen & Fish
One International Place
Boston, Massachusetts 02110-2699

Re:  Doe v. Nutter, McClennen & Fish, et al.

Dear Mr. Blute:

Pursuant to our agreement, enclosed please find check for
$7884.93 which represents the sanctions plus 12% simple interest
from the dates of issuance of same. I had asked you previously to
consider a resolution to this matter short of the full payment,
but all I received back was a demand in full. It's too bad for
you and your firm that this matter could not be so resolved,
because sooner or later an objective look at this action will
reveal the error in Nutter, et al's. ways.

After long, thoughtful analysis, I am satisfied that my
obligation as a member of the Bar is to bring to the attention of
the BBO what appear to be clear and virtually undisputed ethical
lapses in the above action. The lawyers who violated the ethical
rules are rewarded with a sanctions windfall from the parties who
acted ethically. Something is definitely wrong with such a
jaundiced application of the rules which seek to govern the
conduct of lawyers.

If the BBO will not enforce its own Rules against Nutter, et
al., then perhaps the Court of public opinion eventually will.
How an old line Boston law firm can get away with overtly
bullying and threatening - in clear violation of ethical rules -
frivolous litigation for defamation (that they admittedly could
never have successfully sustained because Doe's 93A letter was
privileged) against potential adversaries of their clients is
hard enough to take. Add to this another layer of further ethical
rules violations in open Court while pursuing *sanctions against*
*those persons who had the courage to take them to task.* Such
conduct is not only unbecoming of lawyers, but downright
tortious. Someone is going to have to eventually explain why it
was alright to breach DR 5-103 at the February 2, 1994 hearing by
Nutter, the Partnership, being represented by Blute, the Partner.
Should the application of an ethical rule vary? If so, why?

RECEIVED
JUN 29 1995
J.G.B.

Moreover, I really hope that you have a sound explanation for your misleading letter to Judge Sosman last summer where you told her that you did the sanctions calculations "[as she requested]" when in fact you did anything but. You submitted hourly instead of the Ordered "opportunities lost" and you also added time to the bill for tasks performed which the Judge had specifically Ordered not to be included. As you now know, all this is Documented. Apparently, you were hoping that in the seven months it took the Judge to Rule, that she would forget what she Ordered you to do at the Hearing. This apparently worked, for now.

Sincerely,

Matthew Cobb






CERTIFIED

Z 306 556 131

MAIL

Joseph Blute, Esquire
Nutter, McClennen & Fish
One International Place
Boston, Massachusetts 02110-2699

Fold at line over top of envelope to the
right of the return address

LAW OFFICE OF MATT    / COBB
101 TREMONT STREET
BOSTON, MASSACHUSETTS 02108

JUL. 20. 1999  9:38AM    3NUTTER MCCLENNEN

NO. 9673   P. 2

**0166**

| EXPLANATION | AMOUNT |
|---|---|
| Court Ordered Sanctions | |
| in full with all | |
| applicable interest | |

LAW OFFICE OF MATTHEW COBB
OPERATING ACCOUNT
101 TREMONT ST.
BOSTON, MA 02108

UNT  Seven Thousand Eight Hundred Eighty Four + 93/100 DOLLARS

ATE  5/5 Nutter McClennen & Fish   Court Ordered Sanction in Fully Interest 1165

DESCRIPTION

CHECK AMOUNT

$ 7884-93

BAYBANK
BAYBANK BOSTON, N.A.
MASSACHUSETTS

⑈0016659⑈ ⑆011001742⑈ 224 21026⑈

41 Mass. App. Ct. 137                    137

*Doe v. Nutter, McClennen & Fish.*



JANE DOE & another[1] *vs.* NUTTER, McCLENNEN & FISH
& another.[2]

No. 95-P-1341.

Suffolk. May 10, 1996. - August 16, 1996.

Present: SMITH, PORADA, & IRELAND, JJ.



*Privileged Communication. Attorney at Law,* Canons of ethics, Signing of
pleadings and other court papers. *Appeals Court,* Appeal from order of
single justice. *Practice, Civil,* Frivolous action. *Rules of Appellate Proce-
dure. Rules of Civil Procedure.*

A letter from an attorney, responding to a G. L. c. 93A demand letter and
   stating that the demand letter was defamatory, was absolutely privileged
   as a communication by an attorney preliminary to the initiation of a
   legal proceeding (the threatened c. 93A litigation), and claims for viola-
   tion of G. L. c. 93A, violation of the Massachusetts Civil Rights Act,
   invasion of privacy and intentional infliction of emotional distress based
   on the attorney's response were properly dismissed. [140-141]
S.J.C. Rule 3:07, Canon 7, DR 7-104, does not create an independent cause
   of action with respect to any alleged violation thereof. [141]
A Superior Court judge did not err in awarding counsel fees to defendants
   under Mass.R.Civ.P. 11 for plaintiffs' attorney's bad faith pursuit of
   meritless claims. [141-143]
A single justice did not abuse his discretion in imposing sanctions for
   plaintiffs' counsel's insertion of scandalous and impertinent material in a
   petition under G. L. c. 231, § 118, first par. [143-144]
This court concluded that an appeal from a civil judgment and from orders
   of a motion judge and a single justice assessing sanctions was frivolous
   and accordingly awarded double costs against plaintiffs' counsel. [144]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 17, 1993.

Motions to dismiss and for sanctions under Mass. R. Civ.
P. 11 were heard by *Martha B. Sosman, J.*

After a proceeding for interlocutory appeal was heard in

[1]Richard Doe.
[2]Alan Rose.

Exhibit C                    A19

the Appeals Court by *Laurence, J.*, a motion for entry of separate and final judgment was heard by *Herman J. Smith, Jr., J.*

*Matthew Cobb* for Jane Doe.

*Joseph G. Blute* (*Glenn E. Deegan* with him) for the defendants.

PORADA, J. After a separate and final judgment was entered in the Superior Court dismissing plaintiffs' claims against the defendant law firm, Nutter, McClennen & Fish (NMF), and one of its partners, Attorney Alan Rose, for violation of G. L. c. 93A, violation of the Massachusetts Civil Rights Act, invasion of privacy, and intentional infliction of emotional distress, the plaintiffs filed this appeal. The plaintiffs' claims arose out of a response by the defendant Rose on behalf of a client, South Shore Neurology Associates, Inc. (South Shore), to a thirty-day G. L. c. 93A demand letter that the plaintiffs' counsel had sent to South Shore. The plaintiffs argue that the motion judge erred in (1) dismissing their claims on the ground that they were barred by the absolute privilege which attaches to communications by an attorney preliminary to the initiation of legal proceedings; and (2) in imposing sanctions under Mass.R.Civ.P. 11, 365 Mass. 753 (1974), upon plaintiffs' counsel for filing this action against NMF and Rose. The plaintiffs also argue that a single justice of this court erred in imposing sanctions upon their counsel. We affirm and award double costs against plaintiffs' counsel based on the frivolous nature of this appeal.

We summarize the pertinent undisputed facts from the record. On February 1, 1992, the plaintiffs' attorney sent a thirty-day demand letter pursuant to G. L. c. 93A to South Shore. In that letter, plaintiffs' counsel alleged that his client had been sexually assaulted during a physical examination performed at South Shore's offices and that if South Shore did not respond with a reasonable offer of settlement, an action would commence. On March 27, 1992, Rose responded to the demand letter on behalf of South Shore. In his written response to plaintiffs' counsel, he denied that an assault had taken place and stated at the end of the letter that "[y]our February 1, 1992 letter is defamatory. [The doctor] and South Shore have excellent reputations, and both fully believe that your client's conduct in accusing [the doctor] of sexual and professional misconduct is actionable." Rose also sent a copy of this letter to the plaintiff, Jane Doe.

In November, 1992, the plaintiffs filed a complaint in the Superior Court against the defendants named in this proceeding. At about the same time, the plaintiffs served the defendant Rose with a thirty-day demand letter under G. L. c. 93A claiming that the mailing of a copy of South Shore's response directly to the plaintiff was a violation of the canons of ethics and subjected the defendants to civil liability. In this letter, plaintiffs' counsel referred to South Shore and the doctor as "NMF and Rose's (former?) clients." In response to the filing of the complaint, a copy of which had been mailed to the defendants but not served upon them, NMF and Rose replied that any action against them was barred on several grounds, including an absolute privilege relating to statements made by an attorney relative to proposed litigation, and cited applicable case law on the subject. This action was subsequently dismissed for failure of the plaintiffs to serve the defendants.

In December, 1993, the plaintiffs filed their complaint in this action in the Superior Court. This complaint contained the very same claims as the first complaint which had been dismissed for lack of prosecution. Rose and NMF filed a motion to dismiss based on several grounds, including the ground that the claims asserted were barred by the absolute privilege which attaches to communications by an attorney preliminary to the initiation of a legal proceeding. They also filed a motion requesting counsel fees under G. L. c. 231, § 6F, Mass. R.Civ.P. 11, and the inherent power of the court. The judge dismissed the plaintiffs' complaint on the grounds that the contents of the letter or the mailing of the letter to Jane Doe did not give rise to civil liability against the defendants. The judge stated that she would allow the motion for attorneys' fees against plaintiffs' counsel under rule 11 but not under G. L. c. 231, § 6F.[3] After hearing the parties and reviewing the affidavit submitted for attorneys' fees and costs by counsel for NMF and Rose, the judge awarded NMF and Rose $4,000 in attorneys' fees. The award was based on her findings that plaintiffs' counsel was aware before filing suit that he did not have a viable cause of action against the defendants and that his actions were prompted by a desire to deprive South Shore of its chosen counsel.

Pursuant to G. L. c. 231, § 118, par. 1, the plaintiffs ap-

[3] The motion judge opined that G. L. c. 231, § 6F, applied only to "parties," and not their attorneys.

pealed the dismissal of their claims and the award of counsel fees to the single justice of the Appeals Court. Finding that the Superior Court judge did not abuse her discretion or commit an error of law, the single justice dismissed the petition but imposed sanctions* under Mass.R.A.P. 25, as amended, 378 Mass. 925 (1979), against plaintiffs' counsel for his scandalous and impertinent remarks in which he accused the Superior Court judge of bias, unethical conduct, and inappropriate susceptibility to influence by NMF and Rose. A Superior Court judge allowed entry of a separate and final judgment in favor of NMF and Rose. The plaintiffs then filed this appeal. We now address the merits.

1. *Dismissal of plaintiffs' claims.* The plaintiffs argue that Rose's response to their thirty-day demand letter to South Shore was actionable because his threat to bring a law suit against plaintiff Jane Doe did not relate to a legal proceeding which was contemplated in good faith and which was under serious consideration. *Sriberg v. Raymond,* 370 Mass. 105, 108-109 (1976). The plaintiffs base their argument on the grounds that their accusation of misconduct against South Shore and the doctor was contained in the privileged thirty-day demand letter, see *Theran v. Rokoff,* 413 Mass. 590 (1992), and consequently any threat by the defendants to sue based on that letter could not have been made in good faith or be the subject of serious consideration.

The plaintiffs, however, misconstrue the privilege which attaches to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sriberg v. Raymond,* 370 Mass. at 109. The privilege is absolute. *Theran v. Rokoff,* 413 Mass. at 591-592. *Robert L. Sullivan, D.D.S., P.C. v. Birmingham,* 11 Mass. App. Ct. 359, 361 (1981). An absolute privilege provides a complete defense even if the offensive statements are uttered maliciously or in bad faith. *Correlas v. Viveiros,* 410 Mass. 314, 319 (1991). *Mulgrew v. Taunton,* 410 Mass. 631, 634 (1991). In addition, the absolute privilege which attaches to those statements protects the maker from any civil liability based thereon. *Correlas v. Viveiros,* 410 Mass. at 324. *Robert L. Sullivan, D.D.S., P. C. v. Birmingham,* 11 Mass. App. Ct. at 367-368. See *Frazier v. Bailey,* 957

*The sanctions consisted of an award of attorney's fees in the sum of $3,244.50.

F.2d 920, 932 (1st Cir. 1992)(claims for negligence, defamation, intentional infliction of emotional distress, and violation of Massachusetts Civil Rights Act based on communications preliminary to litigation and during pendency of litigation were entitled to absolute immunity from civil liability under Massachusetts law). To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory. *Correlas v. Viveiros,* 410 Mass. at 324. *Robert L. Sullivan, D.D.S., P. C. v. Birmingham,* 11 Mass. App. Ct. at 367-368.

Here, there is no question that Rose's letter was in response to the plaintiffs' demand letter under G. L. c. 93A preliminary to litigation threatened by the plaintiffs. Accordingly, plaintiffs' claims, all of which originate from that response, were properly dismissed.

To the extent that any of the plaintiffs' claims were based on Rose's mailing a copy of the response directly to Jane Doe, which plaintiffs allege constitutes a violation of S.J.C. Rule 3:07, Canon 7, DR 7-104, 382 Mass. 786 (1981),[3] we conclude that they were also properly dismissed. Assuming without deciding that this conduct did violate the rule, the violation would not give rise to a cause of action against Rose and NMF. The disciplinary rules provide standards of professional conduct of attorneys and do not in and of themselves create independent causes of action. *Fishman v. Brooks,* 396 Mass. 643, 649 (1986). *Robert L. Sullivan, D.D.S., P.C. v. Birmingham,* 11 Mass. App. Ct. at 368-369.

2. *Rule 11 sanctions.* The plaintiffs argue that the motion judge erred in finding that their counsel pursued claims against NMF and Rose that he knew were "patently lacking in any even arguable merit" and that he did so "for the apparent purpose of depriving defendant . . . of its chosen counsel." Rule 11 provides, in pertinent part, that "[t]he signature of an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to

[3]Disciplinary rule 7-104 provides in pertinent part as follows: "(A) During the course of his representation of a client, a lawyer shall not: (1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."