UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
IN RE: MATTHEW COBB            )          NO. 04-MC-10226-PBS
_____)
```

## MEMORANDUM AND ORDER

August 30, 2010

Saris, U.S.D.J.

## I.   INTRODUCTION

Respondent Matthew Cobb contends that his disbarment was improper because (1) a subsequent settlement agreement nullifies the legal impact of the proceedings before the Massachusetts Board of Bar Overseers ("BBO"); (2) there was insufficient evidence to support the allegation of conversion; and (3) the disbarment was the "culmination of a ten year witch hunt against [him] for his protected conduct" against two judges.  (Docket No. 7 at 1.)  He also challenges the proceedings on due process and various other grounds.  After hearing and review of the voluminous record, the Court orders that reciprocal discipline be imposed pursuant to Local Rule 83.6(2) of the Local Rules for the United States District Court for the District of Massachusetts.

## II.   BACKGROUND

### A.   BBO Allegations of Misconduct

On February 12, 2001, Bar Counsel filed a Petition for Discipline against respondent, alleging numerous acts of professional misconduct.  (Administrative Record ("AR") vol. I,

Tab 2.)  Count One arose from Cobb's representation of Dr. Omar
Jaraki.  Among other things, this count involved allegations in a
request for a temporary restraining order filed by Cobb that
Judge Gertner was part of a "criminal enterprise" to prevent her
former client, Dr. Leonid Rozenbaum, from testifying on Dr.
Jaraki's behalf.  (AR vol. III, Tab 18, Ex. 6 at 3; see also id.,
Ex. 18 at 119-20.)  Superior Court Judge James McHugh denied that
motion, ruling that it had been filed "in bad faith and without
any reasonable inquiry," or any inquiry at all, and sanctioned
both Cobb and Jaraki.  (AR vol. IV, Tab 19, Ex. 15 at 17, 25-32.)

Count Two arose from Cobb's representation of Richard and
Jean Nutile, a married couple, alleging that he filed a complaint
against opposing counsel without support, misrepresented to his
clients that they had been sanctioned when in fact he had been,
persisted in a frivolous appeal, converted client funds to pay
the sanctions against him, and alleged without support that Judge
Sosman, then of the Superior Court and who ordered the sanctions,
was improperly influenced or biased.  (AR vol. I, Tab 2 at 7-10.)

Count Three addressed Cobb's representation of Marie Malave,
alleging that he settled her case without authority, continued to
represent her after their interests conflicted, disclosed her
confidential communications, and made misrepresentations to the
court.  (Id. at 11-17.)

B.  **Procedural History**

1. <u>**Disciplinary Proceedings**</u>

On March 7, 2001, Cobb filed an Answer and Request to be Heard in Mitigation to the Petition for Discipline. (<u>Id.</u>, Tab 3.) A BBO Hearing Committee conducted six days of hearings between October 2001 and March 2002. (<u>See generally</u> AR vol. II, Tabs 12-17.) Cobb attended these hearings, cross-examined witnesses, had (but declined) the opportunity to testify, and submitted a Final Argument brief following the close of evidence. (AR vol. I, Tab 4.) On February 21, 2003, the Hearing Committee issued a report finding numerous violations of the disciplinary rules and Rules of Professional Conduct, and recommended that Cobb be disbarred. (<u>Id.</u>, Tab 5.)

As to Count One, the Hearing Committee found that Cobb had filed pleadings containing "scandalous or improbable allegations without conducting an investigation," had persisted with those claims even after receiving evidence of their falsity, represented the existence of a criminal conspiracy to a court without admissible evidence, and exposed his client to sanctions. (<u>Id.</u> ¶¶ 87-89.) In the Nutile case, the Committee found that Cobb had filed a suit that he knew to be unwarranted under existing law, made unsupported accusations of bias on the part of a trial judge who dismissed his claims, persisted in a frivolous appeal, made misrepresentations to his clients, and converted their money to pay sanctions imposed against him personally.

-3-

(Id. ¶¶ 90-94).   In the Malave matter, the Committee found that
Cobb had failed to advise opposing counsel that his client did
not wish to settle a matter, failed to withdraw from
representation when his interests came into conflict with his
client, filed a motion in opposition to his client's interests,
disclosed client communications to the court and to opposing
counsel without authorization and contrary to his client's
interests, misrepresented in pleadings that his client had
authorized a settlement, and made misrepresentations to Bar
Counsel about his conduct in the case.   (Id. ¶¶ 95-98.)

    In addition to these acts of misconduct, the Hearing
Committee identified several aggravating factors, including
Cobb's substantial experience, his failure to acknowledge the
nature or effect of his actions, and Ms. Malave's particular
vulnerability as an immigrant of limited means with little
understanding of English.   (Id. ¶¶ 99-101.)   In discussing its
recommended sanction, the Hearing Committee emphasized the
conversion offense, which carries a presumptive penalty of
disbarment, but found that presumption reinforced by the
cumulative effect of Cobb's other misconduct.   (Id. at 23-25.)

    Respondent appealed the Committee's decision and, on
December 1, 2003, after additional briefing and oral argument, a
BBO Appeal Panel issued an opinion adopting the Hearing
Committee's findings and conclusions, including its
recommendation of disbarment.   (Id., Tabs 6-8.)   The Appeal Panel

-4-

noted that Cobb "does not challenge particular, identified findings of fact or conclusions of law," but instead "offers confusing, rambling, broad attacks on some factual assertions and/or conclusions, liberally punctuated with invectives and diatribes calling into question the integrity of the hearing committee, a Justice of the Superior Court, the Appeals Court and Bar Counsel." (Id., Tab 8 at 20.)  The Panel noted that many of these arguments were not briefed or argued properly, but determined that they lacked merit in any case, and rejected the appeal "in its entirety" after discussing Cobb's challenges to the Hearing Committee's fact-finding.  (Id. at 20 & n.6.)

In recommending that Cobb be disbarred, the Appeal Panel considered his "overall conduct," the repeated sanctions "for filing frivolous pleadings or suits" and appeals, and two discrete instances of conversion or misappropriation of the Nutiles' funds, which carry a presumptive sanction of disbarment. (Id. at 25-26 & n.12.)  Cobb filed an appeal objecting to this report, and on February 9, 2004, the Board voted unanimously and without opinion to deny his request for oral argument and to adopt the report of the Appeal Panel.[1]  (Id., Tabs 9-11.)

On March 8, 2004, the Board filed an Information and Record

---

[1] Two members of the Board recused themselves, and Alan Rose, whose conduct Cobb had challenged in the Nutile matter and whose appointment to the BBO Cobb raised in a subsequent constitutional challenge to the proceedings, did not participate. (Id., Tab 11.)

of Proceedings, including its recommendation of disbarment, with a single justice of the Supreme Judicial Court ("SJC").  (AR vol. I.)  On August 2, 2004, after examining the record and considering the parties' briefs, Justice Greaney issued an opinion ordering that Cobb be disbarred.  (Docket No. 20, Ex. A at 23.)  The Single Justice concluded that the evidence supported the BBO's factual findings.  (Id. at 3.)  He rejected Cobb's many arguments, including the contentions that he had been sanctioned in retaliation for speech protected by the First Amendment and that the evidence did not justify a finding that he converted the Nutiles' money on two separate occasions.  (Id. at 4-14.)

The Supreme Judicial Court reviewed Justice Greaney's ruling for abuse of discretion, affirming it on December 8, 2005.  In re Cobb, 445 Mass. 452, 454-66, 838 N.E.2d 1197, 1202-1210 (2005) (concluding that "[t]he single justice did not abuse his discretion or commit a clear error of law by adopting the findings of the board that the respondent converted client funds.")  The SJC also considered as a matter of first impression Cobb's claim that he was punished unfairly for protected speech critical of two sitting judges, concluding that an "objective knowledge" standard applied and that Cobb had lacked such knowledge, or any evidence of improper motive on the part of the BBO or bar counsel.  Id., 445 Mass. at 466-475, 838 N.E. 2d at 1210-16.  Finally, the court considered and rejected Cobb's due process claims that the counts were consolidated improperly, that

-6-

there was a prejudicial delay in the proceedings, that the
allegation of misconduct varied fatally from the actual proof
thereof, that one of his claims in the Nutile case was not
frivolous, that bar counsel acted improperly and vindictively,
and that Massachusetts' entire attorney discipline system is
arbitrary.  Id., 445 Mass. at 475-79, 838 N.E.2d at 1216-19.

In reviewing the Single Justice's sanction of disbarment,
the SJC noted first that "it is appropriate to consider the
'cumulative effect of the several violations committed by the
respondent."  Id., 445 Mass. at 479, 838 N.E.2d at 1219 (quoting
In re Tobin, 417 Mass. 81, 88, 628 N.E.2d 1268, 1271 (1994)).
The SJC noted that the presumption of disbarment or indefinite
suspension for conversion or misappropriation of client funds was
"'bolstered by the seriousness of [the respondent'] additional
misconduct,' and by the existence of several aggravating
factors."  Id. (citing In re Bailey, 439 Mass. 134, 151-52, 786
N.E.2d 337, 350-51 (2003)).  The court pointed to his "groundless
and scandalous accusations of misconduct against judges and
opposing counsel" and his "misrepresentations to the court about
his authority to settle Malave's case and about documents he
claimed would establish his authority," but noted, "[t]his is not
an exhaustive summary."  Id., 445 Mass. at 479-80, 838 N.E.2d at
1219 (citation omitted).  The court also highlighted Cobb's
substantial experience, his failure to acknowledge the nature or
effect of his actions, Ms. Malave's vulnerability as a client,

-7-

and his accusations of misconduct by the BBO and bar counsel,
which it labeled "unfounded allegations that closely resemble the
conduct alleged in the petition for discipline and found as
fact." Id., 445 Mass. at 480, 838 N.E.2d at 1219.  The SJC
concluded, "The respondent has demonstrated rather convincingly
by his quick and ready disparagement of judges, his disdain for
his fellow attorneys, and his lack of concern for and betrayal of
his clients that he is utterly unfit to practice law.  The only
appropriate sanction is disbarment." Id.

In accordance with Local Rule 83.6(2)(A), respondent
notified the Clerk of this Court of his disbarment on August 12,
2004.  (Docket No. 4; see also Docket No. 2.)  Pursuant to the
Rule, the Court directed Cobb to inform it of any reason why it
should not impose identical discipline.  (Docket No. 5.)  Cobb
requested a hearing and, on January 10, 2005, submitted a
seventy-seven page brief arguing that his disbarment was
unwarranted for the reasons enumerated in Local Rule 83.6(2)(D).
(Docket No. 7.)  The case was reassigned to this Court on
December 15, 2009.  (Docket No. 11.)

## III.  **DISCUSSION**

Pursuant to Local Rule 83.6(2)(D), which governs discipline
imposed by other courts,

> this court shall impose the identical discipline unless
> the respondent-attorney demonstrates, or this court
> finds, that upon the face of the record upon which the

discipline in another jurisdiction is predicated it clearly appears:

(i) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(ii) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this court could not, consistent with its duty, accept as final the conclusion on that subject; or

(iii) that the imposition of the same discipline by this court would result in grave injustice; or

(iv) that the misconduct established is deemed by this court to warrant substantially different discipline. Where this court determines that any of said elements exist, it shall enter such other order as it deems appropriate.

As the First Circuit has explained, "This rule recognizes that 'disbarment by [a state] does not result in automatic disbarment by the federal court.'" In re F. Lee Bailey, 450 F.3d 71, 73 (1st Cir. 2006) (quoting In re Ruffalo, 390 U.S. 544, 547 (1968)) (alteration in original).  However, "it also provides appropriate deference to the original state proceeding by limiting federal court review to determining only that the state proceeding complied with due process, that there was adequate proof of misconduct, and that imposing reciprocal discipline would not result in a grave injustice." Id. (citing Theard v. United States, 354 U.S. 278, 282 (1957)).

A.    **The Settlement Agreement**

Cobb's first argument is that he has been absolved of any misconduct by a 2005 settlement agreement entered into between Cobb and several parties to a related civil suit, including the BBO and the Clients' Security Board ("CSB").  (Docket No. 10.) Cobb filed multiple federal suits following his disbarment.  The first, Cobb v. Supreme Judicial Court et al., No. 04-10390-MLW, alleged procedural and constitutional defects in the disciplinary process, and was dismissed in 2004.  Cobb v. Supreme Judicial Court of Massachusetts, 334 F. Supp. 2d 50 (D. Mass. 2004).

Cobb brought his second suit, Cobb v. Rabe & Nutile, No. 05-11910-MLW (D. Mass. 2005), under 42 U.S.C. § 1983 against Richard Nutile and Assistant Bar Counsel Jane Rabe, claiming that Rabe had bribed or coerced Nutile in connection with his testimony before the Hearing Committee.  Cobb dismissed that action pursuant to a settlement agreement.  The agreement contained the case caption and was signed not only by Cobb, Rabe, and Nutile in the case pending before Chief Judge Wolf, but curiously, also by the BBO and CSB, who were not parties.  It indicated that

> [a]ll above described Parties hereto hereby release, acquit and forever discharge each other Party hereto from any and all claims of any sort, and in the Actions whether asserted or unasserted, without reservation, from the beginning of time through the date written below.  Notwithstanding the foregoing sentence, all Parties hereto acknowledge that nothing in this Agreement constrains, or could constrain, the authority of the BBO to determine for itself the admissibility and force of any evidence respecting the bases of case number CSB 2005-0009 that might be proffered at a hearing on any petition for reinstatement Cobb might file in the future.

(Respondent's Mot. to Dismiss, Ex. A at 1-2.)  Cobb filed a

motion with the SJC in May 2006 seeking to vacate his disbarment,

claiming that this language absolved him of any wrongdoing.

(Docket No. 20, Ex. D.)  A Single Justice denied the motion

without hearing or opinion on May 19, 2006.  (Id., Ex. E.)  The

settlement also prompted Cobb's latest suit, Cobb v. Rabe et al.,

No. 09-CV-11477-MLW, seeking damages from Ms. Rabe, the BBO, and

the SJC for the continued publication of his disbarment, on the

grounds that he was released and acquitted.[2]  It was also the

basis for his Motion to Dismiss these proceedings, which the

Court denied at a hearing on March 5, 2010.

Cobb argues that the BBO has released its claims of

misconduct under the agreement, and so this Court may not act on

the disciplinary record of those claims.  (Docket No. 22 at 13.)

The plain language of the agreement preserves the BBO's

discretion to oppose a future motion for reinstatement, directly

undermining Cobb's position that the BBO waived any such claims

against him.  In any event, the SJC's final judgment predated the

settlement agreement, and as such, there were no extant

disciplinary "claims" for the contract to extinguish.  Moreover,

---

[2] Cobb initiated another action in the United States Supreme
Court, United States ex rel. Cobb v. Massachusetts, No. 08-M-57,
submitting a Motion for Leave to File a Bill of Complaint
pursuant to 28 U.S.C. § 1251(b), which was denied without opinion
on February 23, 2009.  (See Docket No. 13, Ex. M.)

Cobb has offered no authority for the proposition that the agreement would bar this Court from imposing reciprocal discipline, and he does not dispute that he remains disbarred in Massachusetts state courts.[3]

## B.   **Deprivation of Due Process**

### 1.   **Procedural Due Process**

Cobb claims that his due process rights were violated because (1) there was a fatal variance between the allegations of conversion and the evidence presented, in that Bar Counsel modified her theory of conversion to account for what she claims was an erroneous trial court error; (2) there was a prejudicial

---

[3] Bar Counsel explained why the BBO and the CSB signed the agreement: the suit was dismissed in exchange for an agreement by the CSB to release any monetary claim it had against Cobb for repayment of funds paid to the Nutiles in compensation for Cobb's conversion.  The BBO stated that it signed the agreement not to waive any disciplinary claim but rather intended to ensure that it retained the ability to determine the weight of any evidence offered at a future reinstatement hearing.  (Docket No. 21, Ex. 1 at 1-2, 4-5.)  Bar Counsel points to a contemporaneous email in which Cobb stated that he sought an

> agreement [that] will acknowledge that the CSB . . . waives--in consideration for the dismissal by Cobb (or words to that effect, a quid pro quo)--their right to any monetary claims against Cobb in the Nutile matter. Plain and simple.  Whatever they want to argue later, if ever, that whatever obligation that Cobb had in Nutile was never taken care of, then that's fine.

(Id. at 1-2.)  Another of Cobb's contemporaneous emails states that the agreement preserved the BBO's "rights . . . to call their own shots administratively / procedurally future tense re me, and also lays any litigation between me and their crew forever to rest."  (Docket No. 24, Ex. 4 at 9.)

delay in filing the Petition for Discipline that rendered Dr. Jaraki unavailable to testify; and (3) he was prejudiced by the improper consolidation of the three counts of misconduct.  The SJC rejected these arguments, holding that respondent had ample notice of the nature of the conversion claims, the essence of which did not change; that mere delay does not justify dismissal of a disciplinary proceeding and that Cobb was not prejudiced in any event because he could have taken Dr. Jaraki's deposition and because his affidavit and prior testimony were considered by the BBO; and that severance of cases is anathema to the purpose of bar discipline.  In re Cobb, 445 Mass. at 476-77, 838 N.E.2d at 1216-18; see also In re Abbott, 437 Mass. 384, 391-92, 772 N.E.2d 543, 549 (2002) (rejecting similar argument regarding notice); In re London, 427 Mass. 477, 481, 694 N.E.2d 337, 340 (1998) ("[D]elay cannot be a basis for dismissal."); In re Saab, 406 Mass. 315, 322 n.10, 547 N.E.2d 919, 923 n.10 (1989) ("[S]everance of separate issues in bar discipline cases is inappropriate because it would defeat the very purpose of bar discipline.") (quotation omitted).

   After reviewing the record, the Court rejects the argument that "the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process."  L.R. 83.6(2)(D)(i).

   2.   **First Amendment**

Cobb contends that the entire disciplinary proceeding was a sham concocted by bar counsel to punish his protected speech criticizing two judges.  Notwithstanding the basic axiom that judicial officers are not above reproach, an attorney's speech rights are circumscribed in the courtroom.  See Gentile v. State Bar of Nev., 501 U.S. 1030, 1071 (1991); In re Zeno, 504 F.3d 64 (1st Cir. 2007); United States v. Cooper, 872 F.2d 1, 3 (1st Cir. 1989) ("Nor may an attorney seek refuge within his own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality.").

In considering the First Amendment rights of an attorney disciplined for falsely criticizing a judge in a pending case, some courts have followed the subjective standard in New York Times Co. v. Sullivan, 376 U.S. 254, 279-81 (1964), which affords protection except where the attorney's statements were made with "actual malice".  See, e.g., In re Green, 11 P.3d 1078, 1084 (Colo. 2000).  The majority, however, has rejected this position expressly and extends protection only where "the attorney had an objectively reasonable basis for making the statements." In re Cobb, 445 Mass. at 469-70, 838 N.E.2d at 1212-13 (collecting cases); see also Zeno, 504 F.3d at 66-67 (finding no abuse of discretion where district court sanctioned an attorney who crossed "'the line between legitimate criticism and insult' . . .

-14-

. particularly given the repeated nature of his unfounded accusations and the tone in which they were voiced.") (quoting Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1331 (11th Cir. 2002); In re Palmisano, 70 F.3d 483, 487 (7th Cir. 1995); United States Dist. Ct. for the E. Dist. of Wash. v. Sandlin, 12 F.3d 861, 867 (9th Cir. 1993) (rejecting "actual malice" standard in light of the "interest in protecting the public, the administration of justice, and the profession . . . ." (internal quotation omitted)); Iowa Supreme Court Attorney Disciplinary Bd. v. Weaver, 750 N.W.2d 71, 80-82 (2008).

The record contains no evidence that Cobb had any objectively reasonable basis for his accusations against the judges, nor has he offered any support for his contention that the true purpose of the disciplinary proceeding was to silence him.  As such, he has not demonstrated either an "infirmity of proof" or "grave injustice" as required by Local Rule 83.6(2)(D)(ii) and (iii).

**B.    Evidence of Conversion**

Respondent argues that there was insufficient evidence to support the allegation of conversion in the Nutile matter.  Since Cobb ardently challenges the sufficiency of the evidence, the Court restates the facts in detail.  The Nutiles hired Cobb on December 10, 1991, in connection with a lawsuit against Dr. Michael Hayes and South Shore Neurology Associates, Inc.  (See AR

vol. III, Tab 18, Ex. 18.)  During the course of that litigation,
Cobb filed an amended complaint including allegations of
unethical behavior by opposing counsel, Alan Rose,[4] which he
claimed warranted damages.  (AR vol. IV, Tab 19, Ex. 34.)  On
February 2, 1994, Judge Sosman, then of the Superior Court, held
a hearing on a motion to dismiss, which she allowed in a margin
ruling.  (Id., Ex. 37.)  The court also considered defendants'
motion for Rule 11 sanctions, which asserted that Cobb had prior
knowledge of case law making his claim baseless, but proceeded
solely to deprive defendants of their chosen counsel.  (Id., Ex.
36.)  Judge Sosman indicated at the hearing that any sanctions
would be imposed against respondent alone and not the Nutiles.
(Id., Ex. 41 at 24-25, 31-32.)

On August 12, 1994, Judge Sosman allowed the motion for
sanctions in a margin ruling:

> The action against Nutter, McClennen & Fish [and
> Attorney Alan] Rose was patently lacking in any even
> arguable merit.  The legal research demonstrating that
> lack of any viable cause of action was presented to
> plaintiff's counsel prior to the filing of the action.
> Plaintiff's counsel pursued the action for the apparent
> purpose of depriving defendant South Shore Neurology

---

[4] Cobb argues that he was denied due process on account of
the SJC's appointment to the BBO of Attorney Alan Rose, whose
conduct Cobb challenged as unethical in the Nutile matter.
However, "there is no evidence, or even argument, that Rose
participated in the Cobb matter after his appointment.  Nor was
there a request to this court for discovery on that issue." Cobb
v. Supreme Judical Court et al., 334 F. Supp 2d at 53, 57-60
(dismissing identical argument).  Indeed, the record indicates
affirmatively that Rose did not participate in Cobb's matter.

Associates of its chosen counsel.  <u>As a sanction, the court awards defendants $4,000 in attorneys fees, said fees to be paid by plaintiff's counsel (and not, directly or indirectly, passed on to plaintiff)</u>.

(<u>Id.</u>, Ex. 39 (emphasis added).)  After receiving this order, respondent misrepresented to the Nutiles that <u>they</u> had been sanctioned and offered to split the $4,000 expense with them, assuring them that he would appeal the order and get their money back.  (AR vol. II, Tab 13 at 197-99 (testimony of Richard Nutile).)  Although the Nutiles had been present in court at the hearing, Mr. Nutile testified that they could not hear or understand everything that was happening and never received a copy of Judge Sosman's order directing the sanctions to Cobb alone.  (<u>Id.</u> at 196-97, 204.)

On October 3, 1994, respondent filed a petition for interlocutory review and a motion to stay, in the affidavit for which he alleged that defense counsel "must have some particular power or influence with the trial Court judge."  (AR vol. IV, Tab 19, Ex. 46 at 2.)  Specifically, he claims that Nutter McClennan covertly engineered an improper transfer of the case to Judge Sosman, who permitted Attorney Joseph Blute, a partner at the firm, to represent it in seeking dismissal and Rule 11 sanctions. The record indicates that Judge Barrett, a former partner of Alan Rose at Nutter McClennan, merely recused himself as a result of that conflict of interest, resulting in the assignment of the case to Judge Sosman.  (AR vol. II, Tab 14 at 107-08.)  While

Cobb did claim that Attorney Blute's appearance on behalf of the firm was an ethical violation at the February 2, 1994, hearing, he did not object to the representation, nor has he ever provided legal support for the proposition that a law firm cannot represent itself.[5]  (AR vol. IV, Tab 19, Ex. 41 at 40.) Additionally, nothing in the transcript of that hearing or elsewhere in the record suggests bias or improper influence on Judge Sosman's part.

On October 20, 1994, Judge Laurence of the Massachusetts Appeals Court affirmed both the dismissal of the Nutiles' complaint and the sanctions against Cobb.  (Id., Ex. 55.)  He awarded additional costs based on the expense of defending the appeal, noting that Cobb's petition was "not only scandalous and impertinent but also frivolous, in the sense of being devoid of any rational or supportable basis in fact or law, to the extent it accuses the judge of bias, unethical conduct, and inappropriate susceptibility to unspecified illegitimate influence of the lawyer respondents."  (Id., at 2; see also AR vol. IV, Tab 19, Exs. 56, 57 (setting this sanction at

---

[5] Responding to Cobb's comment, Judge Sosman said, "It seems to me it's bad enough that we're forcing South Shore to incur extra expense . . . but to require Nutter, McClennen to incur extra expense to defend against a frivolous suit is, I think, not something --"  (AR vol. IV, Tab 19, Ex. 41 at 40.)  Contrary to respondent's suggestion, Justice Greaney of the SJC did not acknowledge any prima facie evidence of an ethical violation; he merely noted Cobb's colloquy with Judge Sosman at the hearing. (Docket No. 20, Ex. A at 12-13 & n.3.)

$3,244.50).)  Although the order pointed to Cobb's conduct as the

basis for these additional sanctions, it did not specify whether

they were to be paid by Cobb or by the Nutiles.

Defense counsel later filed a Motion for Entry of Separate

and Final Judgment on the claims against them, which came before

Judge Smith of the Superior Court, who had no previous

involvement with the case.  (Id., Ex. 47.)  Judge Smith allowed

the motion on April 28, 1995, noting that neither set of

sanctions had been paid and ordering "plaintiff's attorney,

Matthew Cobb, to pay, pursuant to Judge Sosman's . . . Order, the

$4,000 sanction plus interest . . . . [and ordered] the plaintiff

to pay, pursuant to the Single Justice's . . . Order, the

$3,244.50 sanction plus interest . . . ."  (Id., Ex. 49, ¶¶ 1, 3

(emphasis added).)  The record, including Cobb's own briefing

before the BBO, indicates that he did not receive notice of this

order until May 2, 1995.  (Id.; AR vol. I, Tab 4 at 3.)  In the

meantime, he received from the Nutiles a $2,000 check dated April

28, 1995, indicating that it was for sanctions.  (Id., Ex. 19(c);

AR vol. II, Tab 13 at 198-99.)

Cobb settled the Nutiles' underlying claim against Dr. Hayes

and South Shore Neurology for $45,000 shortly thereafter.  (See

AR vol. IV, Tab 19, Ex. 20.)  His accounting of this payment to

the Nutiles on June 23, 1995, credited them $2,000 for their

earlier sanctions payment and deducted $3,471.61 ($3,244.50 plus

$227.11 in interest) for the sanctions ordered by Judge Laurence.

(Id.)  Cobb told the Nutiles that he had lost before the Appeals Court and that additional sanctions were ordered, but that he would pay the first sanction and they would pay only the second. (AR vol. II, Tab 13 at 202 (testimony of Richard Nutile).)  The Nutiles agreed, thinking that both sanctions had been assessed against them.  (Id.)

Final judgment was entered on June 1, 1995 (AR vol. IV, Tab 19, Ex. 50), and Cobb appealed on the Nutiles' behalf (id., Ex. 51).  A three-judge panel of the Appeals Court affirmed the orders of the Superior Court, as well as the sanctions ordered previously by Judge Laurence.  Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 138, 668 N.E.2d 1329, 1331 (1996).  In addressing the order of the Single Justice, the court referred to the Nutiles' appeal of the order "imposing sanctions . . . against their counsel," assuming without discussion that Judge Laurence had imposed his sanctions against Cobb.  Id., 41 Mass. App. Ct. at 143, 668 N.E.2d at 1334-35.  Although it did not modify Judge Smith's order expressly, the court affirmed "the order of the motion judge and single justice assessing sanctions against plaintiffs' counsel.  We also consider this appeal frivolous and award double costs against the plaintiffs' counsel."  Id. (emphasis added).  The SJC denied further review on October 30, 1996.  Doe v. Nutter, McClennen & Fish, 423 Mass. 1111, 672 N.E.2d 539 (1996).

Although Appeals Court Single Justice Laurence did not

specify who should pay the sanction, the SJC concluded, "[I]t was obvious from the nature of the proceedings that the sanction was directed at [Cobb]." In re Cobb, 445 Mass. at 465-66, 838 N.E.2d at 1209-10.  Even assuming it was unclear who was to pay the sanction in light of Judge Smith's order, the SJC reasoned that the Appeals Court clarified the matter when it stated explicitly that the sanction was to be paid by plaintiff's counsel. Nutter, McClennen & Fish, 41 Mass. App. Ct. at 144, 668 N.E.2d at 1335 (affirming the orders of Judges Sosman and Laurence "assessing sanctions against plaintiffs' counsel").  On this basis, the SJC concluded that, even if Cobb acted reasonably in initially passing the $3,244.50 sanction to the Nutiles, he was on notice after the Appeals Court's decision of his misunderstanding and converted the funds when he did not return them after that date:

> By . . . the date the Appeals Court decided [the case], there could be absolutely no doubt that the sanction imposed by the single justice was levied against the respondent, and his failure to reimburse the [Nutiles] for their use of their share of the settlement proceeds to pay a sanction owed by him alone constitutes a conversion of their funds.  He still has not repaid his clients.

In re Cobb, 445 Mass. at 466, 838 N.E.2d at 1210.

The SJC also held that substantial evidence supported the BBO's finding that Cobb temporarily converted or misappropriated the Nutiles' $2,000, paid toward the $4,000 sanction imposed by Judge Sosman on Cobb alone, between April 28 and June 23, 1995. Id., 445 Mass. at 464-65, 838 N.E.2d at 1209.  There is no

evidence of infirmity of proof on the conversion claim, which was supported both by documentary evidence and Mr. Nutile's testimony.  Furthermore, Cobb's suggestion that this $2,000 payment was merely an installment on the $3,244.50 sanction is belied both by Mr. Nutile, Cobb's records, which credited the amount back to the Nutiles in whole rather than simply deducting the balance he believed they owed, and Cobb's own admission that he received this check before learning of Judge Smith's order.

Cobb argues that a conspiracy between Ms. Rabe and Mr. Nutile undermines the credibility of Nutile's testimony, claiming, as he did in his 2005 lawsuit, that Rabe secured his false testimony at the disciplinary hearing by offering to help him obtain reimbursement from the CSB of funds converted by Cobb. After reviewing the record, the Court agrees with the SJC that "[t]here is utterly no support for the respondent's claim . . . ." In re Cobb, 445 Mass. at 478-79, 838 N.E.2d at 1218.  Cobb offers one new piece of evidence in support of this conspiracy claim in the form of the Nutiles' application -- which Cobb refers to as an "affidavit" -- to the CSB.  In response to a question asking "How did you learn about the Clients' Security Board," the Nutiles answered, "from Jane Rabe, Board of Overseeres [sic]."  (Docket No. 22, Ex. A at 4.)  This unremarkable statement does not support the conspiracy Cobb alleges.

Cobb argues finally that any misconduct did not warrant the

discipline of disbarment.  Local Rule 83.6(2)(D)(ii) states that the Court shall impose identical reciprocal discipline unless respondent can show "that the imposition of the same discipline by this court would result in grave injustice . . . ."  As the SJC noted, conversion carries a presumptive sanction of disbarment.  In re Cobb, 445 Mass. at 479, 838 N.E.2d at 1219 (citing In re Schoepfer, 426 Mass. 183, 186, 687 N.E.2d 391, 393 (1997)).  Cobb argues that disbarment is excessive because there are no cases where a lawyer was disbarred for "temporary conversion where" the money was repaid years before any BBO inquiry.  However, the Supreme Judicial Court stated that disbarment was appropriate because of multiple acts of misconduct, including baseless accusations against judges and attorneys as well as the conversion of the clients' funds as a result of the second sanction.  In light of this repeated, serious misconduct, respondent has not demonstrated that the imposition of the same discipline by this Court would result in grave injustice.

## ORDER

Respondent is disbarred from practice at the bar of the United States District Court for the District of Massachusetts pursuant to Local Rule 83.6(2)(D).

/s/ Patti B. Saris

_____

PATTI B. SARIS

United States District Judge